Bonita H. REGAN, Plaintiff,

v.

Edwin BOOGERTMAN,
et al., Defendants.

No. CV 90–1392.

United States District Court,
E.D. New York.

May 12, 1992.

Donald W. Leo, Coram, N.Y., for plaintiff.

Reisman, Peirez, Reisman & Calica by Robert Calica, Garden City, N.Y., for defendants Boogertman and Allen.

Robert Webster Oliver, Islip Town Atty., Islip, N.Y., for defendant Town of Islip.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff, Bonita H. Regan ("plaintiff" or "Regan"), a former Deputy Tax Receiver for the Town of Islip, brings the above-referenced action pursuant to 42 U.S.C. § 1983 against the Town of Islip (the "Town" or "Islip"); the Islip Tax Receiver, Edwin Boogertman ("Boogertman"); and

Virginia Allen, who replaced Regan as Deputy Tax Receiver (collectively "defendants").[1] Plaintiff alleges that her termination from employment was wrongful because it was due solely to her political affiliation with the Conservative Party. Plaintiff seeks declaratory, injunctive, and monetary relief including punitive damages. Currently before the Court is defendants' motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.[2] For the reasons that follow, defendants' motion is granted.

## BACKGROUND

On or about January 1, 1982, Boogertman appointed plaintiff to the position of Islip Deputy Tax Receiver. She thereafter filed her oath of office with the Islip Town Clerk. Plaintiff describes her duties at the time of her appointment as the "handling of personnel in the [Tax Receiver's Office] as well as general administration of the aforesaid office." Complaint at 5.

According to plaintiff, in the general elections of 1983 and 1987, Boogertman, with the support of both plaintiff and the Conservative Party, was elected to full four year terms as the Town's Tax Receiver. After each election, Boogertman informed plaintiff that she would continue in her position for the duration of his term. Plaintiff claims that she was not instructed to renew her oath after either election.

On or about November 14, 1989, Boogertman informed Regan that her employment would be terminated if she did not submit a letter of resignation. Plaintiff told Boogertman that she did not intend to resign. Plaintiff asserts that Boogertman told her that he would have to fire her, but that it had "nothing to do with the performance of her duties...." Complaint at 3. Plaintiff offers, in support of this con-

tention, a letter signed by Boogertman, dated November 14, 1989, which states that Boogertman considered plaintiff to have been "a great asset," and a "very capable person" with respect to her duties. Plaintiff last served as Deputy Tax Receiver on November 17, 1989.

Plaintiff alleges that her termination was retaliatory and in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff states that she was informed by members of the Islip Republican Committee that her termination resulted from her enrollment in the Suffolk County and Islip Conservative Committees. Plaintiff asserts that she was further informed that defendants "were furious" because, in the general election of 1989, the Islip Conservative Party had failed to endorse and support the re-election of several Islip Republican elected officials, including the incumbent Islip Supervisor, Frank Jones and, instead, endorsed Democrats who were opposing the Republican candidates.

Defendants assert that plaintiff was employed by the Town in a policy-making position and, therefore, her political affiliation was an appropriate requirement for that position as a matter of law. They move for summary judgment on the basis that her termination from employment, even if a result of her political affiliation, is not actionable under governing law.

## DISCUSSION

### A.  *Summary Judgment Standard*

A motion for summary judgment may be granted only when there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986);

---

1.  By stipulation dated June 3, 1991, the action was discontinued with prejudice against the Islip Republican Committee and Caesar Trunzo, individually and in his capacity as Chairman of the Islip Republican Committee.

2.  All of the named defendants had sought dismissal of plaintiff's Complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

Following oral argument before this Court on January 31, 1991, the Court declined to rule on the motions. Instead, the Court instructed the parties to proceed with discovery and further instructed that upon completion of discovery, defendants could renew their motions, which the Court would then consider as motions for summary judgment pursuant to Rule 56.

*Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). The burden is on the moving party to clearly establish the absence of a genuine issue as to any material fact and "a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Donahue,* 834 F.2d at 57 (citations omitted).

### B. *Political Patronage Dismissals of Public Employees*

Analysis of the political retaliation question begins with *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The *Elrod* plaintiffs were Republican non-civil service employees in the Cook County, Illinois sheriff's office who were dismissed or threatened with dismissal following the election of a Democratic sheriff. A plurality of the Supreme Court held that, as a general rule, the practice of dismissing public employees for political patronage reasons violates the First Amendment. *Elrod,* 427 U.S. at 360, 96 S.Ct. at 2683.

The Supreme Court rejected conditioning the receipt of government benefits on limitations on public employees' First Amendment rights. *Elrod,* 427 U.S. at 360–361, 96 S.Ct. at 2683–84. The plurality and the concurrence relied in part on reasoning that the Court advanced in *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), where the Court held that the State's refusal to rehire an untenured college professor because he had publicly criticized the college administration constituted a cognizable claim because "if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited." *Id.* at 597, 92 S.Ct. at 2697.

In *Elrod,* Justice Brennan stated that political patronage practice "falls squarely within the prohibitions of … *Perry* because [t]he threat of dismissal for failure to provide [support for the favored political party] unquestionably inhibits protected belief and association, and dismissal for failure to provide support only penalizes its

exercise." *Elrod,* 427 U.S. at 359, 96 S.Ct. at 2682. In a concurring opinion, Justices Stewart and Blackmun embraced this aspect of the plurality's opinion.

The Supreme Court recognized the necessity of balancing First Amendment rights against the need for government efficiency and for the effective implementation of electorate-sanctioned policies. Thus, the Court determined that First Amendment principles are not offended when policy-making or confidential public employees are dismissed for political patronage purposes. *Id.* at 372–73, 96 S.Ct. at 2689–90.

Addressing the same issue in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court changed the focus of the inquiry. The Court declared that the ultimate question is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518, 100 S.Ct. at 1294; *see also Lieberman v. Reisman,* 857 F.2d 896, 899 (2d Cir.1988).

The Second Circuit has interpreted *Branti* to mean that "political affiliation is an appropriate requirement when there is a rational connection between shared ideology and job performance…." *Savage v. Gorski,* 850 F.2d 64, 68 (2d Cir.1988). The *Savage* court determined that to decide otherwise would severely hamper the new administration's ability to effectuate its policies and thereby undercut the electorate's vote. *Id.*

In 1990, the Supreme Court had occasion to revisit the issue, but this time with respect to former and current low-level public employees in Illinois who alleged a deprivation of their First Amendment rights because they were deprived of various employment opportunities including promotions, transfers, and recalls because they did not support the prevailing political party. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). The Supreme Court held that the dismissal rule of *Elrod* and *Branti* extends to such employment decisions. *Id.* 110 S.Ct. at 2739. Thus, although the plaintiffs had no legal entitle-

ment to the promotions, transfers, and recalls, the Court found that denial of them based on political affiliation or support is an impermissible infringement on the First Amendment rights of public employees. *Id.* at 2736 (relying on the reasoning advanced in *Perry,* 408 U.S. at 597, 92 S.Ct. at 2697).

With these principles in mind, the Court turns to address the instant motion.

## C. *Plaintiff's Statutory Duties*

■ As stated, the key question is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. at 1294. As a preliminary matter, the Court notes that it is not necessary for defendants to demonstrate that Regan "actually functioned in a policymaking capacity in order to justify [their] use of political affiliation as a qualification for the position [of Deputy Tax Receiver]. It is sufficient to show [that Boogertman was] legally empowered to delegate his authority to [Regan] and intend[ed] to do so." *Ecker v. Cohalan,* 542 F.Supp. 896, 903 (E.D.N.Y.1982).

> Among the indicia that locate a job along the spectrum between policymaker and clerk are: relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, authority to hire and fire employees, authority to prepare budget, and responsiveness to partisan politics and political leaders.

*Id.* at 901.

■ After considering the factors enunciated in *Ecker,* this Court finds that Regan's former position can be fairly characterized as one of policymaking. According to the civil service description, the Deputy Tax Receiver acts for and in place of the Tax Receiver and is responsible for the supervision of subordinate personnel. Ex. A to the Affidavit of Robert J. Cimino. The Islip Town Code (the "Code") defines

the Deputy Tax Receiver as one "who shall act generally for and in place of the [Tax] Receiver." [3] § 42A–2B (footnote added). The Code provides that "the [Tax] Receiver is empowered herein to appoint a Deputy who shall generally act for and in his behalf...." § 42A–3B. Moreover, "the [Tax] Receiver may delegate any of his powers or direct any of his duties to be performed to a Deputy Receiver...." § 42A–4E.

■ Plaintiff argues that the fact that some of her statutorily charged duties, such as the signing of checks, were delegated to civil service employees raises an issue of fact as to whether her position was one of policymaking. However, this contention is not enough, under governing law, to overcome the statutorily enumerated scope of plaintiff's duties. Where, as here, a public official is empowered to act as the alter ego of the elected official, political affiliation is a permitted basis for dismissal. *Branti,* 445 U.S. at 518, 100 S.Ct. at 1294; *Elrod,* 427 U.S. at 372–73, 96 S.Ct. at 2689–90; *Savage,* 850 F.2d at 68.

## D. *Plaintiff's Actual Duties*

Again applying the factors set forth in *Ecker,* this Court determines that, as a matter of law, the functions that Regan actually fulfilled in her capacity as Deputy Tax Receiver fall squarely within the policymaking exception. First, plaintiff was the only non-civil service full-time employee in that department. Indeed, she was the only deputy in that office. *See Ecker,* 542 F.Supp. at 902 (distinguishing instance where there are many deputies from situation where there is only one who is charged by statute to act in place of the commissioner or other department head) (citing *Newcomb v. Brennan,* 558 F.2d 825, 829–30 (7th Cir.), *cert. denied,* 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977)).

■ Plaintiff's own deposition testimony bespeaks her extensive policymaking function in the Department of the Tax Receiver. It was within her discretion to interview

**3.** The duties of the Receiver of Taxes are set forth in Chapter 42A of the Islip Town Code as

well as in New York Town Law §§ 35 and 37 (McKinney 1987).

and recommend individuals for seasonal employment, as well as to decide which employees would be laid off when the office workload decreased. In addition, plaintiff recommended the termination of, and actually fired, a seasonal employee whose work performance she deemed inadequate. The "authority to hire and fire employees" is a pivotal indicia of a policymaking official. *Brown v. Trench*, 787 F.2d 167, 169 (3d Cir.1986).

Plaintiff also played a substantial role in dealing with other government agencies, departments, and officers with regard to the performance of the Department of the Tax Receiver. Plaintiff acknowledged voting in place of Boogertman on at least one occasion with respect to the Town's annual budget at a Town Board meeting. Further, plaintiff testified that she, as opposed to Boogertman, primarily dealt with the Town Comptroller. Plaintiff was responsible in large part for the day-to-day running of the department, functioning in Boogertman's stead during the periods of his absence from the department. Indeed, the record is replete with testimony demonstrating her input into decisionmaking within the department on issues "where there [was] room for principled disagreement on goals or their implementation." *Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir.1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982). Thus, the Court determines that defendants' termination of plaintiff from her duties as Deputy Receiver of Taxes, even if based solely on her political affiliation, does not present any issues of material fact to be decided at trial.

### CONCLUSION

For the aforesaid reasons, defendants' motion for summary judgment is granted pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The Clerk is directed to close the file in this case.

SO ORDERED.