**Bonita H. REGAN, Plaintiff–Appellant,**

**v.**

**Edwin BOOGERTMAN, individually, and in his official capacity as the Receiver of Taxes of the Town of Islip, Virginia Allen, Town of Islip, Defendants–Appellees.**

No. 431, Docket 92–7627.

United States Court of Appeals, Second Circuit.

Argued Oct. 28, 1992.

Decided Jan. 26, 1993.

Arthur V. Graseck, Jr., Port Washington, NY, for plaintiff-appellant.

Robert M. Calica, Garden City, NY (E. Christopher Murray, Reisman, Peirez, Reisman & Calica, Garden City, NY, of counsel), for defendants-appellees Boogertman, Allen and the Town of Islip.

Robert Oliver, Town Atty., Islip, NY, on the brief, for defendant-appellee Town of Islip.

Before: MESKILL, Chief Judge, WINTER, Circuit Judge, and RESTANI,* Judge.

MESKILL, Chief Judge:

This is an appeal from a final judgment entered in the United States District Court for the Eastern District of New York, Wexler, J., granting appellees Edwin Boogertman's, Virginia Allen's and the Town of Islip's motion for summary judgment dismissing appellant Bonita H. Regan's suit brought pursuant to 42 U.S.C. § 1983 claiming that her First and Fourteenth Amendment rights were violated.

According to Regan, defendants violated her constitutional rights by firing her because of her political affiliation. The district court concluded that she held a policy-making position, and therefore partisan loyalty was an appropriate consideration in terminating her employment. Regan ar-gues on appeal that (1) her position was ministerial in nature and therefore she could be dismissed only for cause and (2) the court applied the wrong test to determine whether her termination was a violation of her First Amendment rights.

We affirm the judgment of the district court.

## BACKGROUND

Boogertman, a member of the Republican Party and Receiver of Taxes for Islip, appointed Regan to the position of Deputy Tax Receiver for Islip on January 1, 1982. Regan is a member of the Conservative Party, which supported Boogertman and the Republican Party in past elections. In the 1983 and 1987 general elections, Boogertman was again elected for four year terms with the support of the Conservative Party and Regan. After each election, Boogertman informed Regan that she would continue in her position. In 1989, an election year in which Boogertman was not up for reelection, the Conservative Party and Regan opposed the Republican Party and endorsed candidates for the Democrat Party. On November 14, 1989, following the election, Boogertman told Regan that her employment would be terminated unless she resigned. Regan responded that she would not resign. She was subsequently fired.

Regan instituted this suit, alleging that her dismissal was retaliatory for expressing her political views in violation of her First and Fourteenth Amendment rights. She seeks $1 million in compensatory and $5 million in punitive damages, and injunctive relief reinstating her as the Deputy Receiver. As evidence that she was not terminated for cause, Regan submitted a letter of recommendation from Boogertman praising her efficiency and effectiveness in her position. She also claims that members of the Islip Republican Committee told her that her termination was a result of her membership in the Islip Con-tion.

---

* Honorable Jane A. Restani of the United States Court of International Trade, sitting by designa-

servative Committee. Allegedly, the decision of the Conservative Party not to endorse the Republican candidates during the 1989 election annoyed Frank Jones, the Republican candidate seeking reelection for Islip Town Supervisor. After winning reelection, Jones allegedly applied pressure on Boogertman to terminate Regan. Appellees claim that even if Regan was fired because of her affiliation with the Conservative Party, this was an appropriate consideration because Regan held a policymaking position.

The original defendants [1] moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b). The district court declined to rule on the motions and instructed the parties to proceed with discovery with the understanding that defendants could renew their motions upon completion of discovery. Defendants renewed their motions at the completion of discovery as a motion for summary judgment pursuant to Fed.R.Civ.P. 56. The court granted the motion and dismissed the complaint, *Regan v. Boogertman*, 791 F.Supp. 57 (E.D.N.Y.1992), and Regan now appeals the decision.

## DISCUSSION

### 1. *Summary Judgment*

On appeal from summary judgment, we review *de novo* whether the summary judgment standard was met. For such a judgment to be proper there must be no genuine issue of material fact, and the moving party must be entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Since there is no dispute as to any material fact in this litigation, the only question is whether the defendants were entitled to judgment as a matter of law.

### 2. *Political Patronage Dismissals*

 As a general rule, the dismissal of a public employee for purposes of political patronage infringes on the employee's

First Amendment rights. *Elrod v. Burns*, 427 U.S. 347, 360, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547 (1976). However, protection of First Amendment rights is not absolute, and the Supreme Court has recognized that certain restraints on these rights may be appropriate. *Id.* Any infringement on First Amendment interests, however, must be scrutinized under a strict standard. The test is whether the action by the hiring authority furthers a "vital government end by a means that is least restrictive of freedom of belief and association." *Id.* at 363, 96 S.Ct. at 2684. The benefit gained must outweigh the loss in First Amendment rights. *Id.* The Court recognized that the need for government efficiency and effective implementation of electorate-sanctioned policies was a vital government interest, and therefore the First Amendment would not be offended as long as patronage dismissals were restricted to policymaking positions. *Id.* at 372, 96 S.Ct. at 2689.

The Supreme Court further defined the test for determining when political affiliation would be an appropriate requirement for employment purposes in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The Court rejected the notion that by merely placing the label of "policymaker" on a position it becomes fair game for political patronage insulation from First Amendment scrutiny. There are some policymaking positions in which political affiliation would not be an appropriate employment consideration, such as a coach of a university football team. *Id.* at 518, 100 S.Ct. at 1294. There are other positions in which political affiliation is essential, but the position involves no policymaking. To exemplify that type of situation, the Court looked at a scheme in which two election judges of different parties were required to supervise precinct elections. Although not a policymaking position, a change in party affiliation by one of the judges could make the judge ineligible for that position. *Id.* Therefore, the inquiry is "not whether the label 'policymaker'

---

**1.** On June 3, 1991, by stipulation, the action was discontinued against the Islip Republican Committee and Caesar Trunzo both personally and in his capacity as Chairman of the Islip Republican Party.

or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for effective performance of the public office involved." *Id.*

More recently, the Supreme Court in *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52, *reh'g denied,* 497 U.S. 1050, 111 S.Ct. 13, 111 L.Ed.2d 828 (1990), held that party affiliation was not a permissible motivating factor in firing low-level employees. However, the Court affirmed the *Elrod–Branti* exception for certain high level positions, noting that "[a] government's interest in securing employees who will loyally implement its policies can be adequately served by choosing or dismissing certain high-level employees on the basis of their political views." *Id.* at 74, 110 S.Ct. at 27.

We have interpreted the *Branti* test to mean "that political affiliation is an appropriate requirement when there is a rational connection between shared ideology and job performance." *Savage v. Gorski,* 850 F.2d 64, 68 (2d Cir.1988). It is necessary to scrutinize the functions of the position to determine whether there is that connection. And, although the label "policymaker" itself is not necessarily determinative after *Branti,* we use it here as a convenient shorthand for a person occupying a position calling for party loyalty.

There is no likely circumstance in which a shared ideology is more important than when an elected official appoints a deputy who may act in his or her stead. Elected officials are charged with carrying forth the mandate of the voting public, and in order to effectuate the policies promised the electorate, that official must be able to have trusted advisors and alternates who are directly accountable to that official. *See Elrod,* 427 U.S. at 367, 96 S.Ct. at 2686; *Savage,* 850 F.2d at 68; *Nekolny v. Painter,* 653 F.2d 1164, 1170 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982); *Ecker v. Cohalan,* 542 F.Supp. 896, 901 (E.D.N.Y.1982).

■ By law, the position of Deputy Tax Collector is exempt from civil servant status and the protections afforded therein. N.Y.Civ.Serv.Law § 41 (McKinney 1983). We recognized in *Savage* that New York has considered many of the same criteria for non-civil service status as does a court in determining whether a position is exempt from First Amendment protection. While the Fourth Circuit has held that if a position is exempt from civil service protection one may presume that dismissal for political affiliation is permissible, *Stott v. Haworth,* 916 F.2d 134, 142 (4th Cir.1990), we do not rely on this presumption. There are positions that serve at the will of elected officials that have no impact on or connection with the essential functioning of the office. Therefore, it would not satisfy *Branti* to categorize positions for political dismissal exception purposes solely on a civil service/non-civil service basis. There must be an independent factual analysis of several factors to determine whether the position falls within the political dismissal exception contemplated in *Branti.* Whether a position comes under civil service protection is only one such factor.

■ Other factors considered include whether the position is given policymaking and independent decisionmaking functions by law, "technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials and responsiveness to partisan politics and political leaders." *Ecker,* 542 F.Supp. at 901; *see also Savage,* 850 F.2d at 68–69. Regan argues that her role as the Deputy Tax Collector was merely ministerial; every function was tightly controlled by law or by Boogertman leaving her virtually no discretion. However, we do not merely look at her actions taken while in office. Rather, we also look at the power with which she is vested by law, and which is inherent in the office. *See Matlock v. Barnes,* 932 F.2d 658, 662–63 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 304, 116 L.Ed.2d 247 (1991); *Faughender v. City of North Olmsted, Ohio,* 927 F.2d 909, 913–14 (6th Cir.1991); *Green v. Henley,* 924 F.2d 185, 186 (10th Cir.1991); *Stott,* 916 F.2d at 142; *Hall v. Ford,* 856

F.2d 255, 265 (D.C.Cir.1988); *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241–42 (1st Cir.1986) (in banc), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987); *Bauer v. Bosely*, 802 F.2d 1058, 1064 (8th Cir.1986), *cert. denied*, 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987); *Brown v. Trench*, 787 F.2d 167, 168 (3rd Cir.1986); *Tranello v. Frey*, 758 F.Supp. 841, 845–46 (W.D.N.Y.1991), *aff'd*, 962 F.2d 244 (2d Cir.1992); *O'Connell v. Gorski*, 715 F.Supp. 1201, 1203 (W.D.N.Y. 1989). We conclude that Regan's actions and her authority place her position in the governmental spectrum in which political allegiance is vitally important.

■ According to the Islip Town Code, the office of the Deputy Tax Collector "shall act generally·for and in place of the Receiver." § 42A–2. The Receiver is an elected office. "The Receiver is empowered herein to appoint a Deputy who shall generally act for and in his behalf and who shall perform such duties as are vested and imposed upon that office." § 42A–3(B). That Regan may act as an elected official is strong evidence that she holds a "policymaking" position within the meaning of *Branti*. Additionally, the Tax Receiver "may delegate any of his powers or direct any of his duties to be performed to a Deputy Receiver." § 42A–4(E). That he may not have done so yet is not dispositive. Boogertman or his successor Tax Receiver may delegate duties to the Deputy Tax Receiver more liberally in the future.

Regan was responsible for interviewing and recommending individuals for seasonal jobs, and deciding which employees should be laid off when the work load decreased. *See Brown*, 787 F.2d at 169 (authority to hire and fire an indicia of policymaker). She met with and coordinated office activities with other Town and County officials, agencies and departments including Town Supervisor, County Treasurer and Town Comptroller; attended Town Board Meetings without Boogertman in which the Receiver of Taxes' annual budget was adopted; and was an authorized signatory for checks to any of the checking accounts of the banks in the office. All of these

factors combined with those mentioned above make Deputy Tax Receiver a position in which political loyalty is essential.

**3. The Pickering Standard**

Regan argues that the district court erred in applying the tests established in *Elrod* and *Branti* to this case. Instead, she claims that the court should have applied the balancing test set forth in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In that case, a teacher in the public school systems wrote an editorial critical of the School Board's policies, and he was subsequently fired. The Supreme Court upheld the teacher's claim. The Court reviewed the competing interests involved and weighed " 'the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Ezekwo v. NYC Health & Hospitals Corp.*, 940 F.2d 775, 780 (2d Cir.) (quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734), *cert. denied*, — U.S. —, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991).

*Pickering* is simply not applicable to the present case. Regan, unlike Pickering, had a high level political patronage position. Regan, unlike Pickering, was fired for partisan political reasons, namely her conduct in opposition to the reelection of the incumbent officeholders. In a case like Regan's where an employee is fired for partisan political conduct or affiliation a court should balance the employee's interest in free political belief and association against the government's interest in "securing employees who will loyally implement its policies." *Rutan*, 497 U.S. at 74, 110 S.Ct. at 2737. If the employee holds a policymaking position, the government's interest becomes paramount.

The reasoning of *Elrod* and· *Branti* is applicable even in a situation like this where the firing occurs without a change in administration. There is no case law to suggest that only a newly elected administration can dismiss an employee for political reasons. It is logical for an administra-

tion to expect that once committed to certain policies its key members will adhere to and implement those policies. If a member of the administration in a policymaking position becomes ideologically opposed to those policies, it may well serve the government's interest and the public's interest to dismiss him or her.

The judgment of the district court is affirmed.