**Deborah MATTHEWS, Plaintiff,**

v.

**TOWN OF BLOOMING GROVE and Katherine Bonelli, Defendants.**

No. 94 Civ. 1322 (CLB).

United States District Court, S.D. New York.

April 25, 1995.

---

Pursuant to Fed.R.Civ.P. 56, Defendants here move for summary judgment. The facts set forth below are admitted or assumed true for purposes of this motion.

The powers and duties of Town Supervisor, the elective position held by Defendant Katherine Bonelli, are presently set forth in Town Law § 29(1)–29(16). In general, the Supervisor serves as chief fiscal officer of the town and presides as a voting member at meetings of the town board.[1] The Supervisor prepares a tentative budget for each calendar year, which is adopted, as changed or modified, after a public hearing, by a majority vote of the town board. Subject to the Civil Service Law where applicable, the salaries and job titles of town employees are designated by board resolution.

According to the latest census, conducted in 1990, the population of the Town of Blooming Grove was 16,673. The number of Town employees ranges from 80 to 100, depending on the season, with more employees in the summer. Accordingly, the Town of Blooming Grove is within the first class. *See* N.Y. Town Law § 10 (with exceptions not material, towns of the first class contain a population of ten thousand or more).

Pursuant to Section 29(15) of the Town Law, a Supervisor "[i]n towns of the first class, may designate a bookkeeper or confidential secretary, or both." Town Law § 29(15). The bookkeeper and confidential secretary are within the "exempt" class under the New York Civil Service Law § 41, meaning that such employees are exempt from the requirement of a civil service examination, because their work is regarded as policy making and confidential. All other appointed officials in town government are hired by vote of the entire Town Board, and are generally classified as within the "competitive class," in that the appointment must be made from a current certified list of the civil service commission of those who passed a competitive examination, or in the "noncompetitive class," in that the appointee must satisfy certain objective criteria as to edu-

Stephen Bergstein, Law Offices of Michael H. Sussman, Goshen, NY, for plaintiff.

Richard S. Sklarin, Thurm & Heller, New York City, for defendants.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

On February 24, 1994, Plaintiff, Deborah Matthews, former Supervisor's Bookkeeper/Clerk to the Supervisor, filed this action pursuant to 42 U.S.C. § 1983, alleging she was terminated in violation of the First Amendment to the United States Constitution when Defendants Town of Blooming Grove ("the Town") and Katherine Bonelli, Town Supervisor, failed to reappoint her. Plaintiff seeks reinstatement, back pay, front pay, compensatory damages, punitive damages, attorneys fees and costs.

1. The early predecessor of the Town Supervisor was established in 1683 by the colonial legislature in New York, which provided for the elec-
tion in each town of a "Town Treasurer." In that same year, property taxes were first assessed, to be administered on a town wide basis.

cation and experience but need not pass a civil service examination. All elected officials are within the "exempt" class.

Beginning January 1, 1986, Plaintiff Deborah Matthews worked full-time for the Town of Blooming Grove as "Supervisor's Bookkeeper," also referred to by the civil service title of "Clerk to the Supervisor," pursuant to appointment by Defendant Bonelli's predecessor. In November 1991,[2] Katherine Bonelli, a Republican, was elected Town Supervisor and asked Plaintiff to continue as Clerk to the Supervisor. Plaintiff understood that the position was annually appointed; actually, the appointee serves at the pleasure of the Town Supervisor. *See* Town Law § 19(15); *Dusanenko v. Maloney,* 560 F.Supp. 822, 823 (S.D.N.Y.1983) ("The appointment is made solely by the Supervisor, to serve at his pleasure, although the salary is fixed by Town Board resolution."), *aff'd,* 726 F.2d 82 (1984).[3]

As Supervisor's Bookkeeper/Clerk to the Supervisor, Plaintiff's responsibilities included preparing quarterly tax reports which the Town was required to file with the State and Federal government. This task involved reconciling earnings of Town employees and the amount of taxes received by the Internal Revenue Service and the State. Plaintiff also determined the amount of surplus funds to invest, performed bookkeeping for the Town's bank accounts, presented financial reports to the Town Supervisor, and provided information in budget preparation.

Plaintiff alleges she also typed Defendant Bonelli's correspondence on occasion, but in March 1993 another Town employee assumed performance of nearly all of the Supervisor's typing needs. Plaintiff was told not to open Defendant Bonelli's mail or to make appointments for her. From mid-March 1993 through December 31, 1993, Defendant Bonelli assigned a part-time typist to answer her telephone calls and open her mail.

Plaintiff alleges that in early December 1993, she saw a local newspaper advertisement for her position. In a telephone conversation, Defendant Bonelli allegedly stated that she was replacing Matthews "because she was 'disloyal' and had not properly performed her job duties." *Affidavit of Deborah Matthews* ¶ 25. Defendant Bonelli contends that one of the reasons for deciding not to reappoint Plaintiff was that in November 1993, a state auditor had examined the Town's finances and determined that two of the Town's bank statements were not properly reconciled. Plaintiff responds that she was overworked, and the real motivation for the discharge was that she maintained a close friendship with Linda Jurain, whose husband, Ronald Jurain, was Defendant Bonelli's electoral opponent in the 1993 election for Town Supervisor.

On February 24, 1994, Plaintiff filed suit pursuant to 42 U.S.C. § 1983 alleging she was terminated for political reasons and for exercising her right to association in violation of the First Amendment to the United States Constitution. A supplemental state law claim for violation of Article 1 of the New York State Constitution is also asserted.

The United States Supreme Court has held that political affiliation is a permissible employment criterion for some positions. *Elrod v. Burns,* 427 U.S. 347, 360, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 517–18, 100 S.Ct. 1287, 1294–95, 63 L.Ed.2d 574 (1980). In *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Court summarized the so-called "Elrod–Branti political dismissal exception":

> In *Elrod,* we suggested that policy-making and confidential employees probably could be dismissed on the basis of their political views. In *Branti,* we said that a State demonstrates a compelling interest in infringing First Amendment rights only where it can show that "party affiliation is

---

**2.** Defendants allege that this election took place in November 1992. Statement of Material Facts Pursuant to Local Rule 3(G) ¶ 5. This factual dispute is not material to the outcome of the case.

**3.** Plaintiff's Counter–Statement of Material Facts Pursuant to Local Rule 3(G) incorrectly denies that the Town Supervisor is authorized to appoint on an annual basis a Clerk to the Supervisor and alleges the Town Board has authority for this appointment. *See* Town Law § 29(15).

an appropriate requirement for the effective performance of the public office involved."

*Id.* at 71 n. 5, 110 S.Ct. at 2735 n. 5.

■ As these guidelines "do not lend themselves to easy or automatic application," our Court of Appeals has identified factors to consider when deciding whether a job is one "calling for party loyalty." *Vezzetti v. Pellegrini,* 22 F.3d 483, 486 (2d Cir.1994) (*quoting Regan v. Boogertman,* 984 F.2d 577, 579–80 (2d Cir.1993)). The indicia include whether the employee (1) is exempt from civil service protection; (2) has some technical competence or expertise; (3) controls others; (4) is authorized to speak in the name of policymakers; (5) is perceived as a policymaker by the public; (6) influences government programs; (7) has contact with elected officials; and (8) is responsive to partisan politics and political leaders. *Id.* This list of indicators is not exhaustive, nor is one factor always dispositive. The proper approach is to assess all the factors in order to determine whether "there is a rational connection between shared ideology and job performance." *Id.* (quoting *Savage v. Gorski,* 850 F.2d 64, 68 (2d Cir.1988)).

■ This inquiry must focus on the nature of the job rather than the specific activities of the particular incumbent. "We do not merely look at [plaintiff's] actions while in office. Rather, we also look at the power with which she is vested by law, and which is inherent in the office." *Regan v. Boogertman,* 984 F.2d 577, 580 (2d Cir.1993). While no local job description is available for Supervisor's Bookkeeper or Clerk to the Supervisor,[4] the powers inherent in the office are controlled by New York law. The legislature has authorized this particular job for all first class towns, statewide, and placed the power of appointment with the Town Supervisor, as an exception to the power of appointment generally, which resides with the Town Board.

This Court concludes that the position of Supervisor's Bookkeeper, or Clerk to the Supervisor, is a job for which political affiliation is a valid consideration. First, the position lacks civil service status. As Our Court of Appeals stated in *Savage v. Gorski,* 850 F.2d 64, 69 (2d Cir.1988), the State of New York has relied upon most of the Elrod–Branti factors in exempting a certain few public employment positions from its constitutionally-mandated civil service system, namely "the confidential nature of the position, the performance of duties which require the exercise of authority or discretion at a high level, or the need ... to have some expertise or personal qualities which cannot be measured by a competitive exam." *Id.* (*quoting Burke v. Axelrod,* 90 A.D.2d 577, 578, 456 N.Y.S.2d 135, 137 (3d Dep't 1982)). The Court noted:

> Both the interests of federalism and the conservation of judicial resources would ordinarily be better served by the federal courts' giving substantial deference to the state's judgment where government positions are so defined. Otherwise, federal courts will be embroiled in determining at each change of state or local administration which positions are appropriately within the political patronage system. Such a determination not only creates the possibility of a super-civil service overseen by the courts, but allows the federal judiciary to intrude undesirably into the very structure of state and local governments.

*Id.*

In *Savage,* our Court of Appeals held that the position of "confidential secretary" to the Director of the Erie County, New York, Correctional Facility was appropriately within the political patronage system because the secretary's duties involved confidentiality, discretion in disseminating information to the public, and independent judgment regarding department policies and procedures. *Id.*

Here, the position of Supervisor's Bookkeeper is authorized under the very same provision that established the right of the Town Supervisor to appoint a confidential secretary. Section 29(15) of the Town Law provides that a Supervisor "[i]n towns of the

---

4. Plaintiff alleges she contacted the county clerk to obtain a job description for Clerk to the Supervisor and was told none exists. (Affidavit of Deborah Matthews). Job descriptions for an ac-count clerk and a bookkeeper, submitted by Plaintiff to this Court, make no mention of Town Supervisor. (Exh. A to Affidavit of Deborah Matthews).

first class, may designate a bookkeeper *or* confidential secretary, *or* both." Town Law § 29(15) (emphasis added). The Court concludes from a plain reading of this provision that a Supervisor may choose to appoint only a Bookkeeper who would be empowered to perform all of the functions of a confidential secretary. A Town Supervisor may even appoint his or her spouse as bookkeeper or confidential secretary. *See* 1991 N.Y.St. Cmpt. 91–18, 1991 WL 173790.

It is clear that a Supervisor's Bookkeeper/Clerk to the Supervisor may perform confidential duties, such as typing correspondence containing confidential financial or legal information. *See Savage,* 850 F.2d at 66 (finding confidential position where plaintiff "acts on phone messages to the superintendent involving confidential matters such as personnel actions, labor relations, and legal actions, and may be responsible for compiling confidential reports.") Plaintiff admits she typed correspondence for the preceding Supervisor which contained information she felt was improper to divulge to other people because of the nature of the Supervisor's position, which included preparing the Town budget before it become final. (Matthews Deposition at 74–77). Although Plaintiff alleges that her only involvement in the preparation of the Town budget was to provide financial figures about the Town's health and liability insurance, a trusted Bookkeeper may assist a Supervisor in preparing a town budget, which was considered a "political issue" each year in the Town of Blooming Grove, and probably in most towns.

The Supervisor's Bookkeeper/Clerk to the Supervisor is authorized to act on behalf of the Supervisor when making investments of funds and preparing tax reports. She occupies a position of trust and affects government programs by her responsibility for determining the amount of Town funds to invest and where to do so. She possesses technical expertise and consults directly with a public official, the Town Supervisor, on a daily basis.

The fact that this particular Plaintiff may not have performed all of the customary services of a Supervisor's Bookkeeper/Clerk to the Supervisor for Defendant Bonelli, does

not alter the nature of the position itself, or the powers inherent in the office, which is the issue in this case. Consideration of the *Vezzetti* factors as applied to this particular position in the table of organization of town government in New York, is not to be distorted because in a particular town, by custom or neglect, a particular incumbent was permitted or required over a short or long time to render only non-confidential, non-policy related bookkeeping services. The Town Supervisor was empowered by the legislature to have the benefit of this policy making and confidential position, and this right should not be deemed waived under the facts present here.

Accordingly, for the reasons previously set forth, Defendant's motion for summary judgment is granted. The Clerk shall enter a final judgment.

SO ORDERED.