**Elizabeth C. HOGAN, Plaintiff,**

v.

**George PATAKI, Individually and as Governor of the State of New York, James G. Natoli, Individually and as Director of State Operations of the State of New York, Barbara Ann DeBuono, M.D., M.P.H., Individually and as Commissioner of the New York State Department of Health, Jerry Jasinski, Individually and as Acting General Counsel of the New York State Department of Health, and State of New York, Defendants.**

No. 96–CV–551.

United States District Court, N.D. New York.

Jan. 15, 1997.

Richard Hamburger, P.C., Melville, NY (Richard C. Hamburger, of counsel), for Plaintiff.

Office of the Attorney General, Department of Law, Albany, NY (Darren O'Connor, Asst. Atty. Gen., of counsel), for Defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

This case arises from the discharge of Plaintiff Elizabeth Hogan from her position as Assistant Counsel in the Bureau of Professional Medical Conduct at the New York State Department of Health. Hogan asserts, and Defendants do not deny, that the reason for her discharge in April, 1995, was to free up positions within the Department of Health to make them available for Pataki Administration appointees. What is in dispute, however, is whether Hogan's termination infringed on her First Amendment rights under the United States Constitution.

The New York State Department of Health ("DOH") hired Hogan as an Assistant Counsel in the Department's Bureau of Professional Medical Conduct ("Bureau"). The Bureau is responsible for prosecuting charges of professional misconduct brought against physicians, physician's assistants, and specialist's assistants in New York. Such misconduct can include fraud, gross negligence and incompetence, sexual abuse, drug- or alcohol-induced misbehavior, moral unfitness, and harassment or intimidation. Bureau attorneys are prosecutors, and they generally possess strong litigation skills and a thorough knowledge of medical procedures and practices.

Prior to working for the Bureau, Hogan worked as an Assistant District Attorney for the County of Albany. In March, 1994, Hogan was appointed as an Assistant Counsel with the Bureau. Her position was classified as "exempt" such that she did not have to sit for a competitive exam and she was not protected from termination by the Civil Service Law. *See* N.Y.Civ.Serv.Law §§ 41 & 75. Furthermore, Hogan's job was relatively high-paying; her annual salary in early 1995 was $53,428, well above the $36,300 average salary of DOH employees.

On or about April 7, 1995, Hogan was discharged from her position with the DOH. Defendants, members of the Pataki administration, state that Hogan, as an exempt worker, was chosen for firing at random to make room for Pataki appointees.

## II. DISCUSSION

In their motion for summary judgment, Defendants argue that Bureau attorneys, like Hogan, are among the "policy making" and "confidential" employees who can be discharged for political reasons. According to Defendants, Bureau attorneys represent the Director of the Office of Professional Medical Conduct, the DOH, and the public in general.

In the alternative, Defendants move for summary judgment based on qualified immunity. Because no clearly established law of which a reasonable state official would be aware prevented them from discharging Hogan for political reasons, the individual defendants contend that they cannot be held liable for damages under 42 U.S.C. § 1983. Defendants also argue that once Hogan's federal cause of action is dismissed, the Court should decline to exercise jurisdiction over her state law claims. Finally, they argue that the Complaint should be dismissed on this basis insofar as it seeks monetary relief against the State of New York and the other defendants in their official capacities, it is barred by the Eleventh Amendment.

In support of her cross-motion and in opposition to Defendants' motion, Hogan asserts that because there is no rational connection between her political ideology and the performance of her job, her firing was in violation of the First Amendment. Hogan claims that her responsibilities were well-defined and essentially limited to the administrative act of prosecuting doctors. She also argues that she did not decide which physicians to charge; could not settle cases without the consent of her superiors; had no authority to formulate policy; and did not function as a legal advisor to any person in a policy making position. In sum, Hogan sees herself as a relatively low-level attorney with little power, far removed from the political appointees who run the DOH.

### A. Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 56(c), a court may grant summary judgment if it appears "that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Furthermore, it is the substantive law that will determine what facts are material to the outcome of a case. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

Initially, the moving party has the burden of informing the court of the basis of its motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court must then resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). However, the non-moving party must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Only when the Court concludes that no rational finder of fact can find in favor of the non-moving party should summary judgment be granted. *Gallo v. Prudential Residential. Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994).

## B. Qualified Immunity

The Court will examine the issue of qualified immunity first; if qualified immunity attaches in this instance, this may obviate the need for this Court to delineate the precise contours of the constitutional rights at issue here. Indeed, the Supreme Court has emphasized the importance of resolving the issue of qualified immunity early in a proceeding. *See, e.g., Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (noting that whether qualified immunity is applicable is a question of law, not fact, for the trial judge to resolve long before trial).

In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court articulated the test that still controls today: "[G]overnment officials performing discretionary functions ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738; *see also Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) ("Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'") (*quoting Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738).

In determining whether a particular right was clearly established, courts in this circuit consider three factors: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991); *see also Prue v. City of Syracuse,* 26 F.3d 14 (2d Cir.1994). Moreover, qualified immunity protects a defendant even where the right in question was clearly established if it was objectively reasonable for the defendant to believe the acts did not violate that right. *See Benitez v. Wolff,* 985 F.2d 662 (2d Cir.1993).

Analyzing the facts and law at issue here, the Court is inclined to conclude that the individually named defendants' conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Indeed, in a case remarkably similar to the one at bar, this Court determined that these same defendants did not violate a "clearly established statutory or constitutional right" in firing an Assistant Counsel at the Bureau of Professional Medical Conduct. *See Bavaro v. Pataki,* 96–CV–121 (N.D.N.Y.1996) (Decision of June 10, 1996).

In *Bavaro,* this Court granted Defendant's Motion for Summary Judgment and held that the actions of these same defendants

did in fact comport with the First and Fourteenth Amendments, so it follows that

a reasonable state officer could have believed that the firing did not violate plaintiff's constitutional rights. However, even if plaintiff eventually was found to be protected from political termination by the First and Fourteenth Amendments, the Court believes that the law is sufficiently murky or the factual question is sufficiently close that a reasonable state officer could still believe that plaintiff's firing was permissible under the Constitution.

Transcript of June 10, 1996 Decision at 23.

In fact, there appears to be few distinguishing characteristics between the *Bavaro* case and this case. Both Elizabeth Hogan and Ralph Bavaro were fired on April 7, 1995, to create openings for persons of the Pataki administration's own choosing. Plaintiffs in both cases challenge the constitutionality of the firings under the First Amendment. The only apparent dissimilarity between the two cases is that Bavaro worked as Associate Counsel and Hogan worked as Assistant Counsel in the Bureau; Associate Counsel are one level senior to Assistant Counsel.

With this distinction in mind, the Court will ascertain whether a different conclusion is necessitated here.

### C.  Hogan's First Amendment Claim

■ As a general rule, the dismissal of a public employee for political reasons infringes on the employee's constitutional rights. *See Elrod v. Burns,* 427 U.S. 347, 360, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 514–15, 100 S.Ct. 1287, 1292–93, 63 L.Ed.2d 574 (1980). On this issue, the Court agrees with Hogan that the distinction between firing her specifically because she is a Democrat and firing her at random to provide positions for Pataki supporters is a distinction without a difference. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) (requiring political affiliation as substantial or motivating factor in defendants' decision to terminate employment). As stated by the Third Circuit, the problem with the alternative view is that "[termination] to make positions available for political supporters [in essence] reflects a failure to support [the new incumbent]." *Bennis v. Gable,* 823 F.2d 723, 731–32 (3d Cir.1987).

■ Accordingly, Hogan has made out a *prima facie* case of dismissal on the basis of her political views. However, the protection afforded in *Elrod v. Burns* is not without limitation. More recent cases provide an exception under which "the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. at 1294–95. The Second Circuit has further clarified that "political affiliation is an appropriate requirement when there is a rational relation between shared ideology and job performance." *Savage v. Gorski,* 850 F.2d 64, 68 (2d Cir.1988). As a result, if Hogan's position as Assistant Counsel in the Bureau of Professional Medical Conduct falls within the *Elrod–Branti* exception, Hogan does not have a constitutional claim.

■ The Second Circuit recently clarified the factors to be considered in assessing the applicability of the *Elrod–Branti* exception. These factors include:

whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.

*Vezzetti v. Pellegrini,* 22 F.3d 483, 486 (2d Cir.1994); *Regan v. Boogertman,* 984 F.2d 577, 580 (2d Cir.1993). This list is not exhaustive, and no single factor or group is dispositive. Instead, all factors must be considered in their totality to determine whether a rational connection exists between shared ideology and job performance. *Vezzetti,* 22 F.3d at 486.

As this Court noted in its previous decision in *Bavaro,* the position of Bureau prosecutor involves many of the *Vezzetti* factors. First, as a Bureau prosecutor Hogan was exempt from civil service protection. Sec-

ond, as an experienced litigator Hogan has technical competence and expertise. Third, Hogan is authorized to speak in the name of policymakers; nearly every statement Hogan made as a prosecutor was made in the name of her superiors, most of whom were policymakers, because Hogan was their representative. Fourth, Hogan is responsive to partisan politics and political leaders because Hogan must execute what are often political decisions (by actually prosecuting the doctors). Finally, Hogan earned a high salary in her position as Assistant Counsel. Although not included in the *Vezzetti* factors, a high salary typically is viewed as an additional common characteristic of jobs for which political affiliation is rationally related to job performance. *See Savage*, 850 F.2d at 68; *Tranello v. Frey*, 758 F.Supp. 841, 847 (W.D.N.Y.1991), *aff'd in part*, 962 F.2d 244 (2d Cir.1992).

On the other hand, some of the *Vezzetti* factors militate in favor of Plaintiff's position that political affiliation is not related to her job performance. First, Hogan did not have contact with elected officials. However, the relevance of this factor is somewhat diminished in that there are only four statewide elected officials in New York at the state level—the Governor, Lieutenant Governor, Comptroller, and Attorney General. Consequently, only a limited number of employees can have direct contact with them. As Defendants note: "Representative government would be dealt a crippling blow if an incoming administration were required to retain all exempt employees who do not have contact with one of these four individuals." (Defs' Mem. of Law at 17).

Second, and in contrast to the plaintiff in *Bavaro*, Hogan did not control others. However, the absence of supervisory responsibilities is a common characteristic of attorneys in general, and prosecutors in particular. Not surprisingly, this factor has not prevented courts from ruling against non-supervisory attorneys who claim that their discharges were politically motivated. *See, e.g., Vona v. County of Niagara*, 1995 WL 222049 (W.D.N.Y.1995); *Catterson v. Caso*, 472 F.Supp. 833, 838 (E.D.N.Y.1979); *Williams*

*v. City of River Rouge*, 909 F.2d 151 (6th Cir.1990).

■ Finally, the remaining two *Vezzetti* factors, whether Hogan was perceived as a policymaker by the public and whether she influenced government programs, are less clear. In analyzing the remaining factors, a court should not look merely at the actions of the employee while in office. Rather, it should "look at the power with which [the employee] is vested by law, and which is inherent in the office." *Boogertman*, 984 F.2d at 580.

Here, Hogan was authorized to negotiate settlements, direct investigators, and counsel witnesses, all of which may implicate policy considerations. Furthermore, her job description clearly contemplated that she might be relied upon to render legal advice implementing public policy, and that she might choose a litigation strategy or set legal precedent with an impact on public policy.

As this Court previously held in *Bavaro*, a Bureau prosecutor's authority is such that political allegiance may be said to be rationally related to the performance of the job. *See Mummau v. Ranck*, 531 F.Supp. 402, 405 (E.D.Pa.), *aff'd*, 687 F.2d 9 (3d Cir.1982) (where job duties " 'contemplate' that the public officer 'might' be relied upon to render legal advice implementing policy, the official is not protected by *Elrod* and *Branti* "); *Ness v. Marshall*, 660 F.2d 517, 522 (3d Cir.1981). Indeed, other courts have held similarly in cases involving government attorneys. *See, e.g., Tranello*, 758 F.Supp. at 847 ("Government attorneys, because they are attorneys must advocate the positions of and counsel the government officials for whom they work"); *O'Connell v. Gorski*, 715 F.Supp. 1201, 1204 (W.D.N.Y.1989) (assistant Erie County attorney); *Ness v. Marshall*, 660 F.2d 517, 522 (3d Cir.1981) (city solicitor); *Clark v. Brown*, 861 F.2d 66 (4th Cir. 1988) (assistant district attorney); *Newcomb v. Brennan*, 558 F.2d 825 (7th Cir.1977) (deputy city attorney).

In summary, most of the factors enunciated in *Vezzetti* operate in favor of the conclusion that Hogan is not protected from political discharge. Accordingly, the Court finds that Defendants did not violate Plaintiff's

constitutional rights in discharging her from her position at the Bureau. Naturally, then, in so far as the individually named defendants are concerned, they are entitled to qualified immunity in that their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

### D. Plaintiff's State Law Claims

In her second cause of action, Plaintiff alleges that Defendants violated her rights under the New York Constitution as well. However, before the Court delves into the merits of these claims, it must first determine whether the Court should exercise supplemental jurisdiction over these purely state claims. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

■ It is now well settled that although the doctrine of supplemental jurisdiction is one of flexibility and discretion, it is fundamental that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139; *see Young v. New York City Transit Authority,* 903 F.2d 146, 163–64 (2d Cir.1990). "A district court ought not 'reach out for ... issues, thereby depriving state courts of opportunities to develop and apply state law.'" *Young,* 903 F.2d at 164 (*quoting Mayer v. Oil Field Systems Corp.,* 803 F.2d 749, 757 (2d Cir.1986)). These same principles underlie our 11th Amendment jurisprudence:

A federal court's grant of relief against state officials on the basis of state law ... does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism.

*Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). Thus, supplemental jurisdiction should not be exercised merely because "the exercise of such judicial power is desirable or expedient." *United States v. Town of North Hempstead,* 610 F.2d 1025, 1029 (2d. Cir.1979).

Because Hogan is not entitled to *Elrod–Branti* protection as a matter of law, no federal question remains. Therefore, the Court declines to exercise jurisdiction over Hogan's claims implicating the New York State Constitution.

### III. CONCLUSION

In summary, the Court finds that the individually named defendants are entitled to qualified immunity. In addition, the Court finds that none of the defendants violated Plaintiff's federal constitutional rights in discharging Hogan from her position at the Bureau. Furthermore, the Court declines to exercise jurisdiction over Hogan's claims implicating the New York State Constitution. For the stated reasons, it is hereby **ORDERED** that Defendants' Motion for Summary judgment is GRANTED and Plaintiff's Cross–Motion is DENIED.

**IT IS SO ORDERED.**