Alfred LARGO, Terence Reynolds, Gregory Chambers, George M. Parry, Melvin Lopez, Dominick Amendolare, James Lynch, Victor Cole, and Richard F. Schaller, Plaintiffs,

v.

Dennis C. VACCO and Salvatore W. Page, Defendants.

No. 96 Civ. 1362(CLB).

United States District Court, S.D. New York.

July 18, 1997.

Kim Berg, Lovett & Gould, White Plains, NY, for Plaintiffs.

Franklyn H. Snitow & Paul F. Millus, Snitow & Pauley, New York City, for Defendants.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

By motion heard and fully submitted on June 6, 1997, Defendants move for summary judgment pursuant to Rule 56(b), F.R.Civ.P., on the ground that no genuine issues of material fact exist and that the Defendants are entitled to judgment as a matter of law. [Notice of Motion at 5/9/97]. Since our Court of Appeals reviews summary judgment *de novo*, we assume full familiarity with the record including the respective statements of the parties under Local Civil Rule 56.1 of this Court [formerly numbered 3(g) ], and will refrain from extensive recital of the uncontested facts.

Plaintiffs Alfred Largo, Terence Reynolds, Gregory Chambers, George M. Parry, Melvin Lopez, Dominick Amendolare, James Lynch, Victor Cole and Richard F. Schaller ("Plaintiffs") were formerly employed by the New York State Department of Law's Medical Fraud Control Unit ("MFCU") as criminal fraud investigators.[1] [First Amended Complaint at 3/26/96]. The function of the MFCU, which was established under New York Executive Law § 63(3) and (8), is to investigate and prosecute offenses which arise from New York's various health care services, including Medicaid.

Plaintiffs' claims arise out of the Defendants' termination or failure to reappoint Plaintiffs to their positions on November 29, 1995 allegedly because of their political affiliations. The sole Defendants are New York State Attorney General Dennis C. Vacco ("Vacco"), as Chief Executive Officer of the State's Department of Law, and Salvatore W. Page ("Page"), the Deputy for Administration of the Department of Law. The Complaint suggests that they are sued solely in their individual capacities. [Complaint at 3–4].

Plaintiffs allege that each was appointed "in the Department of Law by a Democratic predecessor of Vacco," *Id.* at 4.

The First Amended Complaint charges that Defendants were engaged in an alleged common plan and/or scheme, along with other un-named co-conspirators, to terminate Plaintiffs' positions without a pre-termination hearing, which it is claimed, the Fourteenth Amendment of the United States Constitution requires. *Id.* at 11–12. Plaintiffs contend that such scheme included the removal of Plaintiffs' positions,

> "not on the basis of merit and fitness, but on the basis of partisan policies and with a view towards creating job positions for members of the Republican Party who had supported Vacco in his election campaign."

*Id.* at 6. As a result, Plaintiffs claim to have suffered a deprivation of their salaries and benefits, embarrassment, humiliation, anxiety, public degradation and ridicule, and impairment to their reputations. *Id.* at 12. Plaintiffs seek compensatory and punitive damages, as well as reasonable attorneys' fees, *Id.* at 14, on the grounds that their First Amendment rights of association and/or speech have been violated; their First Amendment right to petition the government has been denied; and their rights under the Equal Protection Clause of the Fourteenth Amendment have been violated, pursuant to 42 U.S.C. § 1983. *Id.* at 12–13. Essentially, plaintiffs present an *Elrod* case (*Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)).[2]

Defendants seek summary judgment on the grounds that: (1) the Plaintiffs cannot satisfy their initial burden to prove that their terminations were politically motivated; (2) the Plaintiffs are "policy makers" and confidential investigators, and therefore not Constitutionally protected from a patronage dismissal; (3) the defendants are entitled to qualified immunity; (4) the Defendants' alleged acts did not constitute an abridgement of the Plaintiffs' right to petition the government for a redress of their grievances; and (5) the Plaintiffs fail to sustain a claim of

---

1. Plaintiff Alfred Largo was the Unit's Chief Investigator. [Complaint at 2].

2. This Court has previously dismissed the Third Claim pleaded. See Memorandum and Order filed July 19, 1996.

violation of the Equal Protection Clause. [Defendants' Memorandum in Support of Motion at 5/9/97].

In order to establish claims for wrongful termination based on political patronage, a Plaintiff must prove that he or she engaged in constitutionally protected conduct relating to a political affiliation or activity, and that such affiliation or activity was a motivating factor leading to dismissal. *Vezzetti v. Pellegrini*, 22 F.3d 483, 487 (2d Cir. 1994), citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The First Amendment restricts the power of government officials to dismiss public employees because of their political affiliation. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976)(". . . any contribution of patronage dismissals to the democratic process does not suffice to override their severe encroachment on First Amendment freedoms."). However, Plaintiffs concede in their depositions that they never advised anyone at the MFCU of their political affiliations, and they were never asked about them. Plaintiffs Alfred Largo, George M. Parry, Dominick Amendolare, Gregory Chambers and Melvin Lopez are all Republicans. The remaining Plaintiffs are Democrats.

Plaintiffs have been deposed and do not set forth any evidence whatever which would support a conclusion that their termination decision was effected by these defendants, or that it was because of their political affiliation. To the extent the Republican plaintiffs regard themselves as being terminated because other job aspirants were friends of the appointing authority, the Court does not apprehend that such an allegation will support an *Elrod* claim, and in any event, there is no evidentiary support.

Following his election in November 1994, and in the summer of 1995, Attorney General Vacco met with employees of MFCU throughout the State, and instructed the professional staff that if they wished to be reappointed to their positions, they should submit a letter, resume and job description to Deputy Attorney General William M. Flynn, not sued in this case. He told the employees that he did not wish to politicize the reappointment process and therefore discouraged the submission of recommendations from individuals who were not directly familiar with the quality of the individual's work.

The activities complained of did not directly involve the personal participation of the two individually sued Defendants. The undisputed record shows that Plaintiffs and others who sought reappointment were required to and did submit their letter, resume and job description to First Deputy General William M. Flynn. There is no dispute that Mr. Flynn had been granted the authority to decide, on the merits, whom to reappoint and whom to hire as investigators and auditors, and also to decide that Plaintiffs should not be rehired, and he did so after interviewing the aspirants and after consulting Russell Buscaglia, a Special Assistant Attorney General, and Daniel B. Reardon, a Chief Investigator for the Attorney General's Office. The Attorney General himself did not participate in the decision to terminate any of the Plaintiffs in this action, and neither did Defendant Page, who simply signed a letter advising the individuals of a decision which had been made by others.

On January 1, 1995, before the re-evaluation started, there were a total of 86 employees in the MFCU designated as Special Investigator, Senior Special Investigator, Supervising Investigator, Assistant Chief Investigator and Chief Investigator. By September 16, 1996, ten of these persons had resigned, four had retired, one died, and only twenty-one (including Plaintiffs) were terminated by reason of the reapplication process. During that period twenty-four new employees were hired in the relevant positions at MFCU.

These objective facts hardly justify allegations of conspiracy and do not establish any direct personal action by Defendants Vacco and Page.

*No Evidence of Patronage Dismissals*

Based on all the evidence before the Court in connection with this motion there is a complete failure of proof that any plaintiff engaged in Constitutionally protected conduct related to political affiliation other than being an enrolled party member, or that

this affiliation or conduct was a motivating factor leading to his dismissal. These are the basic requirements of proof in a patronage dismissal case based on *Elrod* and its progeny. See *Vezzetti v. Pellegrini*, 22 F.3d 483, 487; *Savage v. Gorski*, 850 F.2d 64, 65–68 (2d Cir.1988). There is no evidence that the Plaintiffs ever advised anyone in their organization of their political affiliation; all were relatively inactive politically; and, no evidence has been produced that anyone inquired into their political affiliation. The most that they suggest is that because there was no reason to discharge them and some of the new people hired appeared to be friends of Mr. Vacco, the motivation must have been political. The *Elrod* rule to prevent patronage dismissals of non-policy employees does not reach so far as to permit the drawing of an inference adverse to the Defendants simply from the fact that new hires are friends of a department head. Essentially, Plaintiffs would like to have the trier of fact in this case infer that the firings were politically motivated simply by hearing the official explanation and finding it not to be true because of prior similar conduct by Defendants in connection with other jobs which were clearly of a policy making nature in the Attorney General's Office. This the trier of fact may not be permitted to do. See *Dyer v. MacDougall*, 201 F.2d 265 (2d Cir.L.Hand, J.1952).

Plaintiffs simply do not present evidence sufficient to satisfy their threshold burden to prove that their terminations were in fact patronage motivated, or that Defendants were consciously aware of their political affiliations, or relied thereon.

### Plaintiffs are Policy Makers and Confidential Employees Within Elrod

The detailed job descriptions, as well as the actual jobs worked by the varying Plaintiffs are fully set forth in the Defendants' Local Civil Rule 56.1 statement, and need not be summarized here. Apparently they are not in dispute. This Court notes the recent decision of our Court of Appeals in *Gordon v. County of Rockland*, 110 F.3d 886 (2d Cir. 1997) (cert. filed 65 USLW 3840, June 16, 1997, No. 96–1996), which this Court is bound to follow in connection with this motion.

*Gordon* reasserts prior Second Circuit authority, *Regan v. Boogertman*, 984 F.2d 577, 580 (2d Cir.1993) in holding that the official job description should control application of the policy maker/confidential exception to the *Elrod* rule, rather than a factual finding as to the scope of actual job performance. We are instructed by *Regan* and by *Gordon* that our focus is on the "inherent powers of the office" and not by what any individual officeholder actually does. Instead, "This authority makes clear, that this court's challenge is to discern the duties inherent in the offices held by the plaintiffs," *Gordon* at p. 888, and that the issue is one of law to be resolved by the Court rather than a jury.

■ Whether judged on actual job performance or job description, it is clear to this Court that the positions formerly held by the Plaintiffs are within the policy making/confidential exception of the *Elrod* rule, and for this reason alone this motion must be granted.

### The Vezzetti Factors

Our Court of Appeals has been clear in *Gordon* and in other cases, including the *Vezzetti* opinion itself, in holding that the *Vezzetti* factors should not be "mechanically applied" (*Gordon* at 890), and that they are not "an exhaustive list of indicators, nor is any one factor or group of them always dispositive." (*Vezzetti* at 486).

The first *Vezzetti* factor is whether the employee is exempt from civil service protection. All of these plaintiffs are exempt from civil service protection, although this Court believes that this exemption is somewhat of an historical anomaly. It arises because New York does not place "temporary" positions in the classified civil service. It is one of the great mysteries of bureaucracy that the MFCU had its origins in a "temporary" program initiated in 1975 to detect and stamp out Medicaid fraud using federal grant money to do so. Who would think that in 1997 Medicaid fraud would still be a serious ongoing problem in New York, and that this temporary bureaucracy created to stamp it out would still be engaged on the same mission? Who indeed?

The positions do not appear on a published exempt list, however, all positions which are not classified by the New York State Civil Service Commission, either in the competitive class or non-competitive class[3] are, of necessity, in the exempt class. Little weight should be attached to this first of the *Vezzetti* factors because the MFCU is not in any sense temporary, and never was.

The second *Vezzetti* factor is that the job holder has, "some technical competence or expertise". This factor is satisfied. The third factor, "controls others", is satisfied in differing degrees by the various Plaintiffs. It is doubtful that the fourth factor, "authorized to speak in the name of policy makers", is satisfied. The fifth factor, "is perceived to be a policy maker by the public", is not entirely clear. This depends on how perceptive the public is. Factor six, "influences government programs", is certainly satisfied here. The applicability of seven, "has contact with elected officials", and eight, "is responsive to partisan politics and political leaders", are probably somewhat unclear.

The more effective the MFCU is in discharging its obligations, the more likely it will have contact with elected officials, including district attorneys, and if not responsive to partisan politics, the MFCU certainly should be because it is a matter of public policy whether, to what extent, and how the laws applicable to Medicaid fraud shall be pursued.

Our courts writing on this subject seem to have forgotten that good government is good politics—and, good government requires a vigorous attack on those who are diverting scarce taxpayer funds, state and federal, from the Medicaid programs to their own pockets by means of fraud. The analysis of the *Vezzetti* factors in this case points strongly, but not overwhelmingly, towards finding the Plaintiffs to be policy making and confidential employees within the traditional exception to *Elrod.*

*Qualified Immunity*

Defendant Page merely signed a letter, and the only discretionary function which Defendant Vacco performed is that he directed a re-evaluation of the employees to be conducted by his subordinates, and ordered the termination of those whom the subordinates did not find sufficiently well qualified. This is not a civil rights violation on his part, even if it were to be shown that Flynn or Buscaglia, in discharging their mission had allowed allegedly improper political motivations to intrude upon their judgment. However, it is not a case which implicates qualified immunity.

Although, even after *Gordon,* there is much confusion left in the *Elrod* jurisprudence, the right to be free from retaliation for having exercised First Amendment right of free association was certainly well known and well defined at the time that the Defendants acted.

*Right to Petition*

Plaintiffs also claim that the Defendants' acts constituted an abridgement of the Plaintiffs' right to petition the government for the redress of grievances. [Complaint at 12–13]. Our Court of Appeals has held in *Sheppard v. Beerman,* 18 F.3d 147, 152 (2d Cir.1994), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994), that this claim cannot be maintained in a lawsuit, because "[t]he instant action provides such a vehicle" (for a discharged employee's redress). Thus, this claim has no merit.

*Equal Protection*

Plaintiffs also argue that the rights under their Equal Protection Clause have been violated, due to the Defendants "providing and/or maintaining positions of employment for politically connected individuals who are lesser skilled than Plaintiffs and their terminating the employment of Plaintiffs by reason of Plaintiffs' political affiliation and/or their failure to advocate Vacco's election to the position of Attorney General ..." [Com-

**3.** Positions in the competitive class are filled from among the top three names on a list certified by the Commission after conducting a competitive examination. Positions in the non-competitive class may be filled upon showing that the appointee has the qualifications necessary to perform the job. As to exempt positions, anything goes.

plaint at 13]. The Court agrees with Defendants' argument that Plaintiffs "have failed to identify a group to which they belong which would entitle them to protection under the Equal Protection Clause," because "[t]here is no evidence that the defendants knew that any of the plaintiffs were not politically connected. In the absence of such knowledge, plaintiffs cannot establish the discriminatory intent required to make out an Equal Protection claim." [Defendants' Memorandum at 17–18].

For the foregoing reasons, this Court grants Defendants' motion and dismisses the remaining portions of the Complaint in its entirety, pursuant to Rule 56, F.R.Civ.P.

The Clerk shall enter final judgment.

SO ORDERED.