22 F.3d 483
 Charles VEZZETTI and David Stuart, Plaintiffs-Appellants,
William Griffith, Plaintiff,
v.
Roger PELLEGRINI, Supervisor; Cornelius "Neil" O'Sullivan;
Cornelius "Connie" O'Sullivan; Dr. Edward Fisher and
Pauline Levin, councilpersons, constituting the Town Board
of the Town of Orangetown and The Town of Orangetown,
Defendants-Appellees.
 No. 926, Docket 93-7834.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 14, 1994.
Decided April 20, 1994.
 
 David MacRae Wagner, Freedman, Wagner, Tabakman, Weiss & Insler, New York City, for plaintiffs-appellants.
 Lisa L. Shrewsberry, D'Amato & Lynch, New York City, for defendants-appellees.
 Before: NEWMAN, Chief Judge, WINTER and JACOBS, Circuit Judges.
 JACOBS, Circuit Judge:
 
 
 1
 Two former employees of the Town of Orangetown, New York, appeal the dismissal of their complaint alleging that they were fired on account of their political affiliation as Republicans. Plaintiffs-Appellants Charles Vezzetti and David Stuart pleaded under 42 U.S.C. Sec. 1983 that their rights of free speech and association, as guaranteed by the First and Fourteenth Amendments to the Constitution, were thereby violated by Town Supervisor Roger Pellegrini, the members of the Town Board, and the Town of Orangetown (collectively, "Defendants"). The United States District Court for the Southern District of New York (Goettel, J.) granted summary judgment, finding that Vezzetti held a policymaking position for which party loyalty may be a legitimate test of employment, and that Stuart failed to adduce evidence supporting his allegation that his firing was attributable to his membership in the Republican Party. The district court thereupon also dismissed Stuart's pendent state claim for lack of subject matter jurisdiction, and entered judgment on July 15, 1993.
 
 
 2
 We affirm with respect to Vezzetti, but vacate the dismissal with respect to Stuart and remand to the district court for further proceedings.
 
 BACKGROUND
 
 3
 With the 1992 election of Neil O'Sullivan and Edward Fisher, Democrats achieved control of the Town Board of Orangetown for the first time since 1976. Also sitting on the Town Board at that time were Democrat Pauline Levin and Republican Cornelius O'Sullivan. Rounding out Orangetown's decision-making body was Roger Pellegrini, also a Democrat, who had been the Town Supervisor since 1989. Shortly after the election, Pellegrini and the newly constituted Town Board adopted a 1992 budget that effected a number of economies, including the elimination of the positions held by Stuart, a Republican, and William Griffith, a member of the Conservative Party. Although the 1992 budget eliminated two other positions as well, those positions were vacant when abolished. At about the same time, the Town Board voted to remove Vezzetti as Superintendent of Highways and appoint Raymond Hull, a Democrat, in his place.
 
 
 4
 The Republican-controlled Town Board appointed Vezzetti to his first two-year term as Orangetown Superintendent of Highways in 1982. He was reappointed to successive two-year terms until 1992, when the newly elected Democrat-controlled Board appointed Hull to replace him. Vezzetti claims that the decision to replace him was due to his political affiliation. The Town Board claims that its decision was based on disagreements concerning expenditures for Orangetown's vehicle replacement program, and Vezzetti's support for purchasing highway equipment from a supplier who had been convicted of selling equipment to municipalities at prices that were inflated to cover the cost of kickbacks.
 
 
 5
 On April 1, 1991, then-Superintendent of Highways Vezzetti provisionally appointed Stuart to the position of Administrative Assistant in the Highway Department. Stuart became a permanent employee after he passed a civil service examination. Stuart's appointment provoked some local controversy, which was reflected in public statements by Pellegrini and others characterizing Stuart's appointment as a political favor. While campaigning for re-election to the office of Town Supervisor, Pellegrini vowed to eliminate Stuart's "brand new patronage job." In addition, Stuart claims that Town Board member Neil O'Sullivan privately told him that, while he liked Stuart personally, he had to go after Stuart's job because of Stuart's affiliation with the Republican party and his close association with Joseph Collelo--a former Town Supervisor and political foe of Pellegrini.
 
 
 6
 Vezzetti, Stuart and Griffith filed a complaint in the district court charging Pellegrini, the members of the Town Board, and Orangetown itself with civil rights violations under Sec. 1983. The complaint also alleged, as a pendent state claim, that Defendants' actions violated Stuart's contractual rights under a collective bargaining agreement. Defendants moved for summary judgment. The district court granted summary judgment against Vezzetti and Stuart, and dismissed Stuart's pendent contract claim for lack of subject matter jurisdiction. The district court denied Defendants' motion for summary judgment against Griffith, whose case proceeded to trial and ended with a jury verdict in favor of Defendants. Vezzetti and Stuart appealed.
 
 DISCUSSION
 
 7
 We review de novo a district court's grant of summary judgment and will affirm that decision only if, resolving all ambiguities and drawing all factual inferences in favor of the nonmoving party, there is no genuine issue of material fact to be tried. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir.1991). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. The party seeking summary judgment bears the burden of demonstrating the absence of any genuine factual dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).A. Vezzetti
 
 
 8
 Although Defendants profess on appeal (as in the district court) that the Town Board was animated by non-political concerns when it declined to reappoint Vezzetti as Highway Superintendent, they also urge that summary judgment dismissing Vezzetti's claim is proper even if his removal was politically motivated, because the superintendency is a policymaking position for which politics is a valid consideration in making appointment decisions. Although a firing based on an employee's political affiliation ordinarily is an infringement on First Amendment rights, see Elrod v. Burns, 427 U.S. 347, 360, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547 (1976), the Supreme Court has indicated that, for some positions, political affiliation is a permissible employment criterion. See id. at 367, 96 S.Ct. at 2686; Branti v. Finkel, 445 U.S. 507, 517-18, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980). In Rutan v. Republican Party of Illinois, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Supreme Court summarized the exception it had developed in Elrod and Branti:
 
 
 9
 In Elrod, we suggested that policy-making and confidential employees probably could be dismissed on the basis of their political views. In Branti, we said that a State demonstrates a compelling interest in infringing First Amendment rights only when it can show that "party affiliation is an appropriate requirement for the effective performance of the public office involved."
 
 
 10
 Rutan, 497 U.S. at 71 n. 5, 110 S.Ct. at 2735 n. 5 (citations omitted). We have noted that "the Branti guidelines do not lend themselves to easy or automatic application." Hawkins v. Steingut, 829 F.2d 317, 320 (2d Cir.1987); see also Jimenez Fuentes v. Torres Gastambide, 807 F.2d 236, 241 (1st Cir.1986) (en banc) ("Identifying generic categories of positions where partisan selection and rejection are permissible has ... proven to be an elusive and intractable task."), cert. denied, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987).
 
 
 11
 This Court recently examined the Elrod- Branti political dismissal exception and listed several inquiries useful in deciding whether a position is one "calling for party loyalty." See Regan v. Boogertman, 984 F.2d 577, 579-80 (2d Cir.1993). These factors include whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders. See id. at 580; Ecker v. Cohalan, 542 F.Supp. 896, 901 (E.D.N.Y.1982). This is not an exhaustive list of indicators, nor is any one factor or group of them always dispositive. The proper approach is to assess all the factors in order to determine whether "there is a rational connection between shared ideology and job performance." Savage v. Gorski, 850 F.2d 64, 68 (2d Cir.1988).
 
 
 12
 Examining Vezzetti's position in light of these factors, we agree with the district court that Vezzetti held a job for which political affiliation is a valid consideration. The following facts are not disputed in the record before us. Vezzetti lacked civil service status. He was responsible for a budget of over four million dollars--roughly one-sixth of the entire Orangetown budget. He managed about sixty employees and had broad authority to make hiring decisions. As a department head, Vezzetti consulted directly with elected officials of the Town Board on budgets and programs (such as the vehicle replacement program). Under his supervision, the Highway Department developed public relations campaigns promoting various highway department programs, and Vezzetti himself apparently made frequent public speeches. We conclude, as did the district court, that these elements are sufficient to place the Highway Superintendent within the category of policymaking positions for which party affiliation and a shared ideology may be an appropriate employment consideration.
 
 B. Stuart
 
 13
 Defendants concede that Stuart, unlike Vezzetti, did not hold a policymaking position. As noted above, First Amendment rights are violated when a person holding a nonpolicymaking position is dismissed from employment for political reasons. Branti, 445 U.S. at 517, 100 S.Ct. at 1294; Elrod, 427 U.S. at 350, 96 S.Ct. at 2678. In distributing the burdens of proof on that question, we consult Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Mount Healthy requires the plaintiff to demonstrate initially (1) that he or she engaged in constitutionally protected conduct, and (2) that such conduct was a substantial or motivating factor leading to dismissal. To prevail against such a showing, the defendant must adduce preponderating evidence that the plaintiff would have been fired even in the absence of the protected conduct. Id.
 
 
 14
 There can be no doubt that Stuart's political views and affiliations are constitutionally protected under the First Amendment. See, e.g., Elrod, 427 U.S. at 356, 96 S.Ct. at 2681 ("political belief and association constitute the core of those activities protected by the First Amendment"). However, Defendants contend, and the district court agreed, that Stuart has failed to establish a disputed issue of fact as to whether his status as a Republican was a substantial or motivating factor in the Town Board's decision to abolish his job. We disagree.
 
 
 15
 The role of a court in deciding whether to grant a motion for summary judgment "is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried." Rattner, 930 F.2d at 209. Stuart urges three grounds for demonstrating that his job was eliminated because of his political views and affiliations in violation of his First Amendment rights. First, Pellegrini opposed Stuart's initial appointment to the job on the ground that it was a patronage position. Second, Pellegrini campaigned on a platform that called for the abolition of Stuart's job on the ground that it had been created as an act of patronage. Finally, according to Stuart's deposition testimony, he was told by Neil O'Sullivan, a newly elected Town Board member, that the Town Board was eliminating Stuart's Administrative Assistant job because of his Republican party affiliation and his association with the Republican former Town Supervisor, Joseph Collelo.
 
 
 16
 A problematic aspect of this case is that the two contending explanations for Stuart's firing--punishment for political views and elimination of patronage employment--are not distinct and opposed considerations; politics colors both. The correlation between political allegiance and tenure in a patronage job complicates the determination of what evidence is relevant, what evidence suffices to carry a case to a jury and how a dual motivation affects the outcome. Stuart's claim is not advanced by Pellegrini's denunciation of Stuart's job as a patronage position, or by Pellegrini's campaign promise to eliminate it--except insofar as Pellegrini's positions can be shown to be pretextual. Had Pellegrini fired Stuart in order to replace him with a Pellegrini stalwart, the campaign rhetoric might well support the view that Stuart's firing was political retribution. However, Pellegrini did not replace Stuart; he eliminated Stuart's position altogether. Abolishing a job because it is a patronage position is a ground of justification, not evidence of an improper motive, notwithstanding the fact that patronage jobs are usually awarded because of political affiliation, support or favor.
 
 
 17
 Few cases have applied the Branti- Elrod doctrine in the context of a job eliminated ostensibly for budgetary considerations. In one such case, Laidley v. McClain, 914 F.2d 1386 (10th Cir.1990), the plaintiff complained that her job as an investigator was eliminated by a newly elected district attorney after a bitter campaign in which plaintiff had supported the losing incumbent. The Tenth Circuit reversed the district court's grant of summary judgment dismissing the complaint, finding that, although plaintiff's termination "may have been for legitimate budgetary reasons," most of her duties were redistributed between two newly created jobs with a combined payroll exceeding the plaintiff's salary. Id. at 1393. Therefore, the Tenth Circuit concluded that there was a "legitimate question as to whether the defendant used the budget as a pre-text for dismissing her." Id. A root distinction in the present case is that Stuart's job was eliminated altogether, and there is no evidence that his duties were distributed among newly created positions.
 
 
 18
 A Branti- Elrod claim cannot rest on the implementation of a policy to eliminate one or more patronage jobs. Otherwise, Branti- Elrod would institutionalize patronage jobs, which often are not the most critical or arduous. Prudent city managers would be forced to tolerate wasteful employment rather than incur the sometimes greater expense of litigation. And the political debate that the First Amendment fosters, which in local government is largely concerned with decisions about what services to supply and how many people are required to do them, would be rendered in part futile. Unless there is evidence of political retribution other than a design to curb patronage, there is no case for the jury. Even where such evidence exists, and is credited, there is no claim if the job would have been eliminated in any event to cut the budget--even though the ousted jobholder will often be on the losing side politically, and regardless of any incidental satisfaction the unemployment of an adversary may afford those in power.
 
 
 19
 Nevertheless, we are constrained to reverse the district court because the record does contain some evidence that the new administration acted to punish Stuart for his political affiliation. Stuart's brief recites that he "was told by defendant-appellee NEIL O'SULLIVAN that while he liked STUART personally, they had to go after him and his job as a result of plaintiff-appellant STUART'S party affiliation and being the right-hand man of former Republican Supervisor (and confrontational adversary) of defendant-appellant PELLEGRINI." Appellant's Brief at 3. The transcript of Stuart's testimony, on which his brief relies for support, is rather less emphatic:
 
 
 20
 Q: What about April 1, 1991, how would you describe your relationship with Neil O'Sullivan; did it stay the same as it had been back in the '70's?
 
 
 21
 A: I didn't have too many dealings with him at the time of my appointment. At a town board meeting, which of course is just going to be unsubstantiated, because he made sure he said it by himself when we were alone. He liked me personally, but he had to do this.
 
 
 22
 Q: What?
 
 
 23
 A: Meaning going after me and my job.
 
 
 24
 Q: Did he explain why?
 
 
 25
 A: Figure it out.
 
 
 26
 Q: Because of your affiliation with the parties?
 
 
 27
 A: That, and being the right-hand man of Joe Colello.
 
 
 28
 Q: When did he say this to you?
 
 
 29
 A: Sometime at a town board meeting that I attended late April 1991.
 
 
 30
 This testimony is sufficient to defeat summary judgment, at least when coupled with one other suggestive fact. Stuart points out that he was not the victim of a broad-based personnel cutback. Rather, the budget eliminated only two occupied non-policymaking positions: those held by Griffith, a Conservative, and Stuart, a Republican. In light of the evidence that the Board specifically targeted Stuart for political reasons, and the fact that the only two jobs eliminated by the Town Board's 1992 budget were held by members of opposition parties, we are unable to conclude that no rational factfinder could resolve in Stuart's favor the issue of whether Stuart's political affiliation was a substantial or motivating factor in the Town Board's decision to eliminate his job.
 
 CONCLUSION
 
 31
 For the reasons stated above, we affirm the district court's dismissal of Vezzetti's claims, vacate the dismissal of Stuart's First Amendment and due process claims as well as his pendent state claim, and remand for further proceedings consistent with this opinion.