101 F.3d 685
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Joseph P. SULLIVAN, Plaintiff-Appellant,
v.
Manfred OHRENSTEIN, Individually and as Minority Leader of
the New York State Senate, Robert J. Bergin, Individually
and as Counsel to New York State Senate Minority Leader and
Thomas Cetrino, Individually and as Director of the Minority
Program Office of the New York State Senate, Defendants-Appellees.
 No. 95-9163.
 United States Court of Appeals, Second Circuit.
 May 23, 1996.
 
 APPEARING FOR APPELLANT: Richard A. Kohn, Kohn, Bookstein & Karp, P.C., Albany, NY.
 APPEARING FOR APPELLEE: Frank K. Walsh, Assistant Attorney General, State of New York, Albany, NY.
 N.D.N.Y.
 AFFIRMED.
 Present: CARDAMONE, ALTIMARI, PARKER, Circuit Judges.
 
 
 1
 This cause came to be heard on the transcript of record from the United States District Court for the Northern District of New York and was argued by counsel for appellant and by counsel for appellee.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 
 
 3
 Plaintiff appeals from a final judgment entered in the United States District Court for the Northern District of New York, Smith, M.J., granting defendants' motion for summary judgment and dismissing plaintiff's suit brought pursuant to 42 U.S.C. § 1983 claiming violation of his First Amendment rights. On appeal, plaintiff contends that the district court incorrectly determined that plaintiff was a policy-maker and as a result applied the wrong legal standard. For the reasons discussed below, we affirm the district court.
 
 I. Background
 
 4
 Plaintiff was a legislative analyst in the Senate Minority Program Office from 1987 until 1992. Defendants were the New York State Senate Minority Leader, plaintiff's employer, and others in his office. In May of 1992, plaintiff announced that he would be running for the State Assembly. Plaintiff repeatedly ignored his employer's request to withdraw his candidacy. In July of 1992, defendants terminated plaintiff.
 
 
 5
 Plaintiff was one of approximately twenty-five legislative assistants employed by the Senate Minority Program Office. His job duties included research and writing about Agriculture and Veterans' Affairs, as well as Racing and Wagering issues. In addition, he tracked developments in those areas; arranged meetings for senators; met with constituents concerned about his issues; and organized conferences on the issues. Senators rely upon legislative analysts to make voting recommendations.
 
 
 6
 Plaintiff did not have any subordinates; had no authority to hire or fire others; and worked under several layers of supervision. He was an at-will employee without civil service tenure. Legislative Analysts with the Senate Minority Program Office are designated "policy-makers" under New York's ethics laws, and are required to file annual financial disclosure forms.
 
 
 7
 When plaintiff refused to withdraw his candidacy, defendants fired him. Plaintiff claims that he was fired in retaliation for his views on abortion rights and gay rights. He argues that his views were inconsistent with the Senate Minority Leader's views, and that he was fired because defendants were concerned that plaintiff's candidacy would embarrass the Senate Minority Leader's office.
 
 
 8
 In contrast, defendants maintain that they fired plaintiff because he violated a longstanding, unwritten office policy which prohibited employees from running for state wide office. Defendants claim that the policy was instigated in 1987 in order to avoid the appearance of conflicts of interest. Plaintiff contends that the policy has never before been implemented, and that defendants simply created the policy in order to cover up the true reason for firing him.
 
 II. Discussion
 
 9
 We review the grant of summary judgment de novo under the same standard applied by the district court. Taggart v. Time, Inc., 924 F.2d 43, 45-46 (2d Cir.1991). A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir.1994). With these principles in mind, we review the opinion below.
 
 
 10
 The district court did not determine whether or not the policy against employees running for office existed, or if it did exist whether it was constitutional. Instead, relying on Kaluczky v. City of White Plains, 57 F.3d 202, 208 (2d Cir.1995), the court granted defendants' motion for summary judgment because it determined that plaintiff was a policy-maker and thus could be discharged based on his political affiliations or beliefs, or ideological viewpoints. Plaintiff contends that the court erroneously determined that he was a policy-maker because he had no supervisory authority, and could not hire and fire others. As will become clear, plaintiff's argument is not persuasive.
 
 
 11
 As a general matter, firing an employee based on his or her political affiliations or beliefs violates that employee's First Amendment rights. Elrod v. Burns, 427 U.S. 347, 360 (1976). The Supreme Court has explained, however, that for certain positions, political affiliation is a permissible employment criterion. Id. at 367, Branti v. Finkel, 445 U.S. 507, 517-18 (1980). The Court summarized this exception as follows:
 
 
 12
 In Elrod, we suggested that policy-making and confidential employees probably could be dismissed on the basis of their political views. In Branti, we said that a State demonstrates a compelling interest in infringing First Amendment rights only when it can show that "party affiliation is an appropriate requirement for the effective performance of the public office involved."
 
 
 13
 Rutan v, Republican Party of Illinois, 497 U.S. 62, 71 n. 5 (1990) (citations omitted).
 
 
 14
 This court has reviewed the Elrod-Branti political dismissal line of cases and provided several factors to be considered in deciding whether a position is one calling for "party loyalty" including whether the employee:
 
 
 15
 (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policy-makers, (5) is perceived as a policy-maker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.
 
 
 16
 Vezzetti v. Pellegrini, 22 F.3d 483, 486 (2d Cir.1994). None of the factors is dispositive, and the proper approach is to determine whether "there is a rational connection between shared ideology and job performance." Id. (internal quotations omitted).
 
 
 17
 As noted above, plaintiff is exempt from civil service; has technical expertise in researching issues and following legislative developments; is authorized to speak in the name of policy-makers; is most likely perceived as a policy-maker by the public when he meets with constituents; influences government programs by making voting recommendations; has contact with elected officials; and is responsive to partisan politics in his daily work. He does not control others.
 
 
 18
 Having reviewed all of the factors, it is evident that plaintiff is in a position in which there is a rational connection between shared ideology and job performance. Since he is a policy-maker, political affiliation and political viewpoint are permissible employment criteria for him. Rutan, 497 U.S. at 71; Kaluczky, 57 F.3d at 208. Although the policy-maker inquiry is not the "ultimate question" in this analysis, we are satisfied that the defendants have shown that political viewpoint is an "appropriate requirement for the effective performance" of the position of legislative assistant. Branti, 445 U.S. at 518. Thus, accepting plaintiff's position that defendant fired him because of his political viewpoint, his First Amendment rights have not been violated.
 
 
 19
 Since defendants were free to fire plaintiff because of his political viewpoints, it does not matter whether or not defendants had a policy which prohibited plaintiffs campaign, and if they did have such a policy whether it would be constitutional.
 
 
 20
 We have considered all of plaintiff's arguments and find them to be without merit. Accordingly, the judgment of the district court is affirmed.