**William BECKMANN, Plaintiff**

v.

**George DARDEN, Village of Spring Valley, Defendants**

**No. 02 CIV. 2559(SCR).**

United States District Court, S.D. New York.

Dec. 8, 2004.

Jonathan Lovett, Lovett & Gould, Esqs., White Plains, NY, for Plaintiff.

Bruce Robert Calderon, Michael A. Miranda, Miranda & Sokoloff, Mineola, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. Background:

### A. Procedural History:

William Beckmann (the "Plaintiff") filed this lawsuit against George Darden ("Darden") and the Village of Spring Valley ("Village"; Darden and Village are collectively referred to herein as the "Defendants") claiming that he was terminated from his employment as part-time village assessor on the basis of his race and his political affiliation in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Civil Rights Act of 1991, 42 U.S.C. § 1981, and the First and

Fourteenth Amendments of the United States Constitution.

Defendants have made a motion for summary judgment on three grounds: (1) even assuming Plaintiff was dismissed because of his political affiliation, such a dismissal would not be improper because Plaintiff held a policymaking position; (2) Plaintiff has not, in any event, set forth sufficient evidence that he was terminated because of his political affiliation or his race to withstand summary judgment; (3) Defendant Darden is entitled to qualified immunity on all claims of discrimination on the basis of political affiliation because the Plaintiff's claimed rights were not clearly established.

### B. Statement of Facts:

Plaintiff, a caucasian member of the Conservative Party, held the position of part-time Assessor, Village of Spring Valley, from August 1982 until December 2001, serving two different mayors. On December 4, 2000, Allan Thompson, then Mayor of Spring Valley, nominated the Plaintiff for a new one year term as Assessor at the Village's Annual Organization Meeting. The Board of Trustees voted 3–2 to reject the Plaintiff's reappointment.[1] At another meeting of the Board of Trustees held later that month, Thompson resubmitted the Plaintiff's name, and this time the Board voted to approve the Plaintiff's reappointment for another year as the Village Assessor.

In September 2001, Defendant Darden, an African–American member of the Democratic Party, defeated incumbent Mayor Thompson[2] in the Democratic primary and in the subsequent general election. The Plaintiff had assisted Mayor Thompson in his unsuccessful re-election campaign against Darden. Upon taking office as Mayor of Spring Valley, Defendant Darden decided not to re-appoint the Plaintiff to the position of Village Assessor. Darden considered five candidates for Assessor: Scott Shedler, a Caucasian member of the Democratic Party; Jim Zimmerman, a Caucasian member of the Republican Party; Bruce Sokol, a Caucasian member of the Democratic Party; Laurence Holland, an African–American member of the Democratic party; and the Plaintiff. Darden ultimately decided to appoint Mr. Holland.

## II. Analysis

### A. Standard of review:

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact[.]" Fed.R.Civ.P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### B. Policymaker Exception to § 1983 Claims for Violation of the First Amendment

■ The United States Supreme Court has held that political affiliation is a permissible employment criterion for some positions. *See Elrod v. Burns,* 427 U.S. 347, 367, 96 S.Ct. 2673, 49 L.Ed.2d 547

---

1. Before taking office, the Spring Valley Assessor must be appointed by the Mayor and approved by the Village Board.

2. Thompson was first elected in 1993 and reelected in 1997, both times running on the Republican and Conservative Party lines. The record suggests that he then ran in a Democratic primary against Darden, but it is unclear to the court why he did so.

(1976); *Branti v. Finkel*, 445 U.S. 507, 517–18, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Specifically, a state demonstrates a compelling interest in discriminating based on party affiliation, and thereby infringing First Amendment rights, when it can show that "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 71 n. 5, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). If the Village Assessor position at issue here meets this standard, then the Plaintiff could not establish a First Amendment claim of discrimination based on political affiliation in this case.

 In determining whether the dismissal of a public employee violated the employee's First Amendment rights, the Court must look at the powers inherent in the office rather than the actions actually taken by the employee while in office. *See Regan v. Boogertman*, 984 F.2d 577, 580 (2d Cir.1993). The Second Circuit has outlined a list of eight non-exclusive factors to be considered in determining whether a public employee fits within this so-called Policymaker exception. *See Vezzetti v. Pellegrini*, 22 F.3d 483 (2d Cir.1994). The factors are whether the employee: (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders. *See id.* at 486.

 Of crucial importance in this case is the fact that the Rockland County Civil Service Rules designate the part-time position of Village Assessor, in "any village where the position[ ][is] established," as "confidential or requir [ing] the performance of functions influencing policy." The Second Circuit has held that "the interests of federalism and the conservation of judicial resources would ordinarily be better served by the federal courts' giving substantial deference to the state's judgment where government positions are so defined." *Savage v. Gorski*, 850 F.2d 64, 69 (2d Cir.1988).[3] As such, "where employees terminated by an incoming administrator can show no special circumstances...which would make deference to such electoral and legislative determinations inappropriate, the court should accept those judgments." *Id.* The County has clearly designated Village Assessor as a policy-making position.

Plaintiff argues that the above mentioned language simply "mirrors directly the language set forth in New York State Civil Service Law, § 75(1)(c)" and "in no way controls the analysis under the First Amendment line of cases regarding whether Plaintiff was a 'policymaker'...." Plaintiff's argument is unconvincing. *Savage* specifically addressed a § 1983 First Amendment claim and referenced the New York Civil Service laws in determining that the positions at issue were exempt from First Amendment protection. *See* 850 F.2d at 65. Indeed, it is difficult to reconcile Plaintiff's argument with the purpose of the doctrine outlined in *Savage:* federal court deference to state and local judgments regarding their own officials.

---

**3.** In explaining its reasons for this rule, the Second Circuit noted that, "[o]therwise, federal courts will be embroiled in determining at each change of state or local administration which positions are appropriately within the political patronage system. Such a deter-

mination not only creates the possibility of a super-civil service overseen by the courts, but allows the federal judiciary to intrude undesirably into the very structure of state and local governments." *Savage*, 850 F.2d at 69.

Moreover, the court finds no compelling reasons not to give deference to the County's designation. On the contrary, many aspects of the position support the state's characterization. The position of Assessor [4] undoubtedly requires a certain degree of expertise, including experience involving the valuation of real property, collection and recording of property inventory data, preparation of comparable sales analysis reports, and preparation of signed valuation or appraisal estimates or reports.[5] The fact that the Assessor receives complaints from the public is evidence that the Assessor is held out to the public as a policymaker. And since the work of Assessor is performed under the general direction of the Village Board or Mayor, it clearly involves contact with elected officials.

For these reasons, the court finds that the Village of Spring Valley's Assessor is a policy making position. As such, the Plaintiff cannot state a First Amendment claim of discrimination based on political affiliation.

## C. Confidential Policymaker Exception to Title VII Protection

▮ Title VII excludes from the scope of its protections any elected official's "appointee on the policy making level." 42 U.S.C. § 2000e(f). The analysis of an employee's status as a policymaker for First Amendment purposes does not control the Title VII inquiry. *See Tranello v. Frey,* 962 F.2d 244, 248–51 (2d Cir.1992). In order to be considered an appointee on the policymaking level, an individual must have been appointed by an elected official and must work closely with the appointing authority. *See Butler v. New York State Dep't of Law,* 211 F.3d 739, 747 (2d Cir. 2000).

▮ In this case, there is no dispute that the Plaintiff was appointed by the elected Mayor of Spring Valley. Moreover, there is considerable evidence suggesting that the Assessor works closely with the Mayor. As mentioned above, the work of Assessor is performed under the general direction of the Village Board or Mayor. Moreover, the Plaintiff testified that he reported to the Mayor and spoke to him on a day-to-day basis at times. And even Mr. Rosenthal, one of the Village Board's members, explained that his decision not to vote for the Plaintiff's reappointment in December 2000 was motivated in part by the fact that the Plaintiff was "Allan Thompson's right hand...in all things financial." Rosenthal testified that the Plaintiff attended budget workshops held to discuss solutions to budget shortfalls and was given the responsibility of spearheading the Village's plans to privatize garage collection in the Village.[6]

4. In assessing the position of Spring Valley Assessor, this court has, admittedly, relied on the County of Rockland's job description—not a description created specifically by the Village of Spring Valley itself. Although there may be differences between the County's description and the terms of the position actually in existence in Spring Valley, the County's description is nevertheless instructive as to the general powers and responsibilities of the Spring Valley Assessor. The court has not been made aware of any differences that are directly relevant to its analysis of the policymaker exception in this case.

5. Although the job does not appear to require any specific advanced degree, it clearly requires specialized skills and experience.

6. Admittedly, courts should look at the attributes of the position, not the actual performance of the job, in determining whether an employee was a bona fide policymaker. *See Butler,* 211 F.3d at 749. Although some of the evidence discussed here might more appropriately be classified as part of the Plaintiff's actual performance, rather than the attributes of the position, neither party has argued that the Plaintiff was given unprecedented responsibilities as Village Asses-

In light of this record, the court finds that the Plaintiff was an appointee on the policymaking level, and is therefore not an "employee" covered by Title VII. As such, the Plaintiff cannot properly assert any claims under Title VII, regardless of whether the alleged discrimination was based on political affiliation or race.

### D. Qualified Immunity for Defendant Darden

■ As an alternative defense to liability on any political affiliation claims,[7] Defendant Darden is entitled to qualified immunity in this case. Under this doctrine, government officials are shielded from liability flowing from their performance of discretionary functions as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ Even assuming, contrary to this court's conclusions, that the policymaker exceptions described above are not applicable to the position of Village Assessor, one could not reasonably argue that the fact that this position was entitled to constitutional or statutory protection was clearly established when Mayor Darden decided not to reappoint the Plaintiff in this case. The parties have not cited, and the court is not aware of, any case law specifically holding that the position of part-time Village Assessor (or any similar position in state or local government) is not a policymaking position for the pur-

poses of the First Amendment or Title VII. The *Elrod–Branti* guidelines "do not lend themselves to easy or automatic application," *Hawkins v. Steingut*, 829 F.2d 317, 320 (2d Cir.1987), and the same is undoubtedly true of the similar test applied in the context of Title VII. Given the state of the law, and the facts cited in support of this court's conclusion that the Village Assessor was a policymaking position for the purposes of the First Amendment and Title VII, one could not reasonably argue that the Plaintiff had a clearly established constitutional right not to be discriminated against on the basis of political affiliation or to assert claims under Title VII.

Defendant Darden is therefore entitled to qualified immunity with respect to any political affiliation claims in this case.

### E. § 1983 and § 1981 Claims of Racial Discrimination

■ Courts decide employment discrimination cases using the three-step analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and refined in later cases. *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Stern v. Trustees of Columbia University*, 131 F.3d 305, 311–12 (2d Cir.1997). Although initially established for Title VII claims, this framework applies to § 1981 and § 1983 claims as well.[8] *See Hudson v. International Business Machines Corp.*, 620 F.2d 351, 354 (2d Cir.1980) (§ 1981); *Sor-*

sor. Therefore, what Plaintiff actually did is persuasive evidence of what he was expected to do, particularly given the lack of evidence in the record of the Village Assessor's prescribed powers and responsibilities.

7. Defendants do not argue that Darden is entitled to immunity with respect to any claims of racial discrimination.

8. This court's conclusions that the Plaintiff can assert neither First Amendment claims for discrimination based on political affiliation nor Title VII claims based on any theory of discrimination does not, of course, preclude the Plaintiff from asserting § 1983 and § 1981 claims for racial discrimination.

lucco v. New York City Police Dep't, 888 F.2d 4, 7 (2d Cir.1989) (§ 1983).

 Under *McDonnell Douglas* and its progeny, the plaintiff/employee bears the initial burden of producing evidence sufficient to support a prima facie case of discrimination by demonstrating membership in a protected class, qualification for the position, adverse employment action, and circumstances giving rise to an inference of discrimination. 411 U.S. at 802, 93 S.Ct. 1817. Once the plaintiff has presented a prima facie case of discrimination, the defendant has the burden of producing, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. *See Hicks,* 509 U.S. at 507, 113 S.Ct. 2742. In order to defeat a motion for summary judgment after a showing by the defendant of a nondiscriminatory reason, the plaintiff must submit admissible evidence showing circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination. *See Stern,* 131 F.3d at 312. The Second Circuit has specifically held that the standard principles governing motions for summary judgment apply at each step of this analysis. *See id.* If the plaintiff's evidence was barely sufficient to make out a prima facie case, it may not be sufficient to establish discrimi-

nation after the defendant has proffered a neutral rationale. *See id.*

 Generally, in order to establish a prima facie case of discrimination under Title VII, a plaintiff must present evidence that: (1) he belongs to a protected class; (2) his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination. *See Stern,* 131 F.3d at 311–12. Defendants argue that the Plaintiff has not produced evidence sufficient to establish an inference of discrimination in this case.[9] The court disagrees. Although four of the five candidates for the position of Village Assessor were white, the only black candidate was ultimately chosen, even though he had no experience in the field of municipal assessment and the Plaintiff and some of the other rejected candidates had some experience. Moreover, and perhaps most importantly, at least one of the Village trustees, Bettie Brown, admitted on multiple occasions and in various forums that Darden and the other village trustees considered race in making appointments in an effort to diversify the Village government.[10]

 Defendants argue that the Plaintiff was not reappointed for non-discriminatory reasons. Defendants' note that the Village Board voted against the Plaintiff's reappointment in December 2000, one year prior to the election of Mayor Darden and point to testimony by members of the

9. The Plaintiff has interpreted the Defendants' brief as conceding that the Plaintiff has established an inference of discrimination in this case. The court does not agree with this interpretation. Although Defendants concede that "Plaintiff did receive an adverse employment decision," Defendants actually argue that "[P]laintiff cannot come forward with evidence sufficient to establish that his termination gives rise to an inference of discrimination."

10. For example, Trustee Bettie Brown reported in a community newsletter that Darden and the Trustees of Spring Valley were engaged "in an effort to diversify the Village government's employees to reflect the Village population" and, in the same publication, noted that Mr. Holland was to become the "1st Black Assessor."

Board revealing various sources of dissatisfaction with the Plaintiff's performance as Assessor. In particular, Trustee Delhomme complained that the Village had been forced to return a portion of tax revenue to constituents. Trustee Brown stated that the Plaintiff's assessments had seemed "strange" to her. Trustee Rosenthal thought the Plaintiff didn't have the Village's best interests at heart. Mayor Darden, for his part, noted that there had been complaints of mistakes made by the Plaintiff and complaints that he did not spend enough time at Village Hall. And, finally, there is evidence in the record indicating that the Board's dissatisfaction with the Plaintiff stemmed at least in part from disgruntled Board members' political differences with Mayor Thompson.

 Although Defendants have offered several nondiscriminatory reasons for their actions, they have not provided sufficient evidence to justify summary judgment in this case. Defendants have not cited any documentary evidence of citizen complaints or other mistakes made by the Plaintiff in order to bolster testimony from Village Trustees indicating dissatisfaction with the Plaintiff's conduct as Assessor. Moreover, the Defendants failed to take steps to find a replacement for the Plaintiff after voting against him in early December 2000 and then voted to confirm hear just weeks later. These reasons, along with considerable evidence indicating that the Village was taking steps to recruit racial minorities to diversify its government, combine to create a record on which a reasonable jury could find impermissible discrimination in this case.

Therefore, Defendants motion for summary judgment, with respect to Plaintiff's § 1981 and § 1983 claims of racial discrimination, is denied.

## III. Conclusion

For these reasons, the court orders the following:

1. Plaintiff's First Amendment claims of discrimination based on political affiliation are DISMISSED.

2. Plaintiff's Title VII claims of discrimination based on race and political discrimination are DISMISSED.

3. Alternatively, Defendant Darden is entitled to qualified immunity for all claims of discrimination based on political affiliation.

4. Defendants' motion for summary judgment with respect to Plaintiff's § 1983 and § 1981 claims of racial discrimination is DENIED.

It is so ordered.