460 F.3d 247
 Jose COTARELO, Plaintiff-Appellant,
v.
VILLAGE OF SLEEPY HOLLOW POLICE DEPARTMENT, Jimmy Warren, Jr., Phillip Zegarelli, Mario Defelice, Village Trustee, Robert Higle, Richard Ziejack, Patricia Rodriguez, Daniel Stever, James Hart, Dwight Douglas, Village Administrator, all sued in their individual capacities, Defendants-Appellees.
Docket No. 04-4627-CV.
 United States Court of Appeals, Second Circuit.
 Argued: July 14, 2005.
 Decided: August 9, 2006.
 
 COPYRIGHT MATERIAL OMITTED Christopher D. Watkins (Stephen Bergstein on the brief), Thornton, Bergstein & Ullrich LLP, Chester, NY, for Plaintiff-Appellant.
 James P. Clark (Terence M. O'Neil, Howard M. Miller on the brief), Bond, Schoeneck & King, PLLC, Garden City, NY, for Defendants-Appellees.
 Before WINTER, JACOBS, Circuit Judges, and GLEESON,* District Judge.
 WINTER, Circuit Judge.
 
 
 1
 Jose Cotarelo appeals Judge Yanthis' grant of summary judgment and the resultant dismissal of his First Amendment claim based on an alleged employment retaliation for his protected activity and political affiliation. We affirm. Appellees demonstrated as a matter of law that the same adverse employment action would have been taken even in the absence of appellant's protected speech and political affiliation.
 
 BACKGROUND
 
 2
 Viewing the record in the light most favorable to appellant, the factual background is as follows. Appellant has been a police officer with the Sleepy Hollow Police Department since 1986. After he was caught hunting on a preserve while on duty in December 1991, he paid a fine and was disciplined by the Police Department, agreeing to work for ten days without pay.
 
 
 3
 In December 1998, Cotarelo and another officer, Detective Frank Corona, wrote a letter to the Police Chief, Jimmy Warren, Jr., detailing their concern "about the growing trend in the [Police Department] regarding bigotry and discrimination directed towards the Spanish-speaking police officers." The letter listed the following as examples: (i) a statement by police officer James Reddy at a departmental meeting that he and most of the other officers "resent the Spanish-speaking officers speaking Spanish in headquarters," (ii) other officers' refusal to buzz the plaintiff into headquarters, (iii) retired officer Manny Caxieiro telling Detective Corona that he should not speak Spanish and using an ethnic slur for Ecuadorians, (iv) Officer Reddy's threat to tell the Chief that another officer was speaking Spanish on the telephone, and (v) the discrimination inherent in using the officers' Spanish fluency for some purposes while forbidding them to speak Spanish in front of officers who weren't Spanish-speaking. Officer Cotarelo and Detective Corona asked the Chief to address these issues.
 
 
 4
 In March 1999, Cotarelo filed a federal lawsuit alleging that the work environment at the Police Department was hostile to Hispanics and that the hostile environment worsened after he voiced his opposition to it. In March 2001, the case settled without the defendants admitting any liability.
 
 
 5
 Appellant testified in his deposition that, after he brought the lawsuit, he deliberately decreased the frequency at which he issued tickets and summonses.[1] This led to a decrease in his BETA score, a method of evaluating a patrol officer's productivity. Appellant also testified that ticket and summonses issuance is a valid evaluator.
 
 
 6
 After several failures, Cotarelo passed the Civil Service test for promotion to sergeant in 2001 and was put on the list of candidates for promotion for the first time. Later that year, Officers Paul Hood, Robert Nevelus, and Cotarelo were interviewed by the Police Committee of the Village Board for promotion to sergeant. Three members of the Village Board of Trustees made up the Police Committee, which was to interview candidates for promotion and recommend one to the Mayor. The recommended candidate's name was then to be submitted by the Mayor for a vote of the full Village Board of Trustees.
 
 
 7
 The Police Chief submitted evaluations of all the candidates to the Police Committee, recommending both Hood and Cotarelo, but ranking Hood first. He did not recommend Nevelus for promotion. All three candidates were interviewed by the Village Administrator, Dwight Douglas, and the Police Committee, with Chief Warren and a police lieutenant present. After reviewing the applications and completing the interviews, the Police Committee unanimously recommended Officer Hood for promotion to sergeant. Mayor Zegarelli submitted Officer Hood's name for a vote of the Board of Trustees, which then approved the promotion.
 
 
 8
 Although other officers were promoted to detective rank, one in 2001 and one in 2003, Cotarelo was not considered for those promotions by the Chief. Chief Warren had met with Cotarelo in 2002, shortly after the Hood promotion, and advised Cotarelo to improve his BETA scores in order to be considered for future promotions. In the previous two years, Cotarelo had BETA scores that were next to last among the patrol officers. As noted above, appellant conceded that these low scores were the result of his deliberate inactivity. In 2002, after the advice from Chief Warren, Cotarelo's BETA score ranked last out of the fifteen patrol officers. Moreover, Cotarelo had heard a (mistaken) rumor that Chief Warren had not recommended Cotarelo for promotion to sergeant and, as a result, had ceased to speak to Chief Warren except when professionally necessary.[2] Chief Warren pointed to this behavior as the reason for not considering Cotarelo for promotion to detective.
 
 
 9
 Cotarelo had supported the political campaigns of two of Mayor Zegarelli's past opponents: Janet Gandolfo and Sean Treacey, both Democrats. Mayor Zegarelli, a Republican, had told Chief Warren he had seen what he thought was Cotarelo's patrol car parked outside of Ms. Gandolfo's home while Cotarelo was on duty, but Cotarelo denied that it was his car. In noting Cotarelo's affiliation with the Democratic Party, the Mayor also left Chief Warren with the impression that he preferred not to promote a Democrat.
 
 
 10
 In May 2002, Cotarelo filed the present action, alleging that he was not promoted to sergeant by the defendants in November 2001 because of his national origin, his letter to Chief Warren in 1998, and his 1999 lawsuit. He amended the complaint in January 2003 to include an allegation that he was not promoted to detective because of the letter, his past lawsuit, and the instant lawsuit, and again in November 2003 to allege that he was not promoted because he was associated with the Democratic Party. In August 2004, the district court granted the defendants' motion for summary judgment on all of Cotarelo's claims. Cotarelo appeals only from the grant of summary judgment on his First Amendment claim.
 
 DISCUSSION
 A. Standard of Review
 
 11
 We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. Phaneuf v. Fraikin, 448 F.3d 591, 595 (2d Cir.2006). Summary judgment is only appropriate when there are no genuine material issues of fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 B. First Amendment Retaliation Claim
 
 12
 To survive a motion for summary judgment on a First Amendment retaliation claim, the plaintiff must present evidence which shows "`[1] that the speech at issue was protected, [2] that he suffered an adverse employment action, and [3] that there was a causal connection between the protected speech and the adverse employment action.'" Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000) (alterations in original) (quoting Blum v. Schlegel, 18 F.3d 1005, 1010 (2d Cir.1994)). Further, "the causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action." Blum, 18 F.3d at 1010. Even if the plaintiff demonstrates these factors, the defendant can still prevail on a motion for summary judgment if it can show that it would have taken the same adverse employment action "`even in the absence of the protected conduct.'" Id. (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).
 
 
 13
 A government employee must show that his speech was on a matter of public concern in order for that speech to be protected under the First Amendment. Frank v. Relin, 1 F.3d 1317, 1328 (2d Cir.1993). Generally, speech on "any matter of political, social, or other concern to the community is protected by the First Amendment." Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999) (finding that comments of police officers on crime rates, police staffing, equipment shortages and budgetary matters were of public concern) (quotation marks and citation omitted). Although the district court found Cotarelo's letter and his two lawsuits involved "personal grievances relating to plaintiff's own employment interests" rather than matters of public concern, we have repeatedly held that discrimination in a government workplace is a matter of public concern. Konits v. Valley Stream Cent. High Sch. Dist., 394 F.3d 121, 125 (2d Cir.2005) (citing Feingold v. New York, 366 F.3d 138, 160 (2d Cir.2004), and Mandell v. County of Suffolk, 316 F.3d 368, 383 (2d Cir.2003)). Both the letter and the complaints in the lawsuits concern discrimination problems generally and were not limited to instances affecting only Cotarelo. Compare Ezekwo v. New York City Health & Hosp. Corp., 940 F.2d 775, 781 (2d Cir.1991) (holding that a physician's complaints were not a matter of public concern and thus not protected by the First Amendment where her primary aim was to protect her own reputation, not the public welfare). Cotarelo's letter and lawsuits were therefore protected activity.
 
 
 14
 Next, the plaintiff must show that he suffered an adverse employment action taken because of his or her protected speech. Diesel, 232 F.3d at 107. A failure to promote a qualified candidate may be such an adverse action. Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir.2002). Cotarelo contends that he was not promoted to sergeant or to detective because of his letter and lawsuits. He relies upon four circumstances as proof that he was not promoted as a result of his statements: (i) in 2001, Corona was not rehired as a sergeant after quitting because Mayor Zegarelli said "there were issues"; (ii) a consultant hired to evaluate the Police Department's human resources practices found there was a "strong sentiment that favored officers (i.e., those with personal connections to the Chief or the Mayor or other members of Village government) are essentially impervious to disciplinary requirements or processes"; (iii) in 2002, Mayor Zegarelli asked Chief Warren why he was talking to a person who had a legal action against the Village at that time; and (iv) Chief Warren mentioned appellant's first lawsuit during appellant's interview with the Police Committee.
 
 
 15
 None of the first three events related specifically to Cotarelo. The "issues" regarding Corona are entirely obscure and may have involved any number of events irrelevant to the present actions; the importance of "personal connections" is neither unusual nor necessarily evidence of political influence and was found to be a "sentiment" rather than a fact; and the lawsuit remark was not a reference to Cotarelo. As to Chief Warren's mention of the lawsuit during appellant's interview, appellant himself testified that it was in connection with the drop in his productivity. See Footnote 1, supra.
 
 
 16
 Even if the evidence above were deemed sufficient to allow a trier of fact to find that Cotarelo's speech was a factor in the denial of his promotion, appellees may still prevail on a motion for summary judgment if they can demonstrate as a matter of law that they would have taken the same adverse employment action if the protected speech had not occurred. Blum, 18 F.3d at 1010.
 
 
 17
 Cotarelo cannot dispute that his record in the Department rendered him an unlikely candidate for promotion to sergeant. He had been fined by the state and required to work for ten days without pay when he was caught hunting while on duty in 1991, as some of the Village Trustees remembered when he was up for promotion in 2001. His productivity scores placed him sixteenth out of seventeen patrol officers in 2000 and twelfth out of thirteen in 2001. He conceded in his testimony, moreover, that the low productivity was deliberate. See Footnote 1, supra. His only attempt to show that he was as qualified as, or better than, Hood is an assertion in his brief that Hood's BETA scores in 2001 were lower than Cotarelo's, not mentioning that Hood's scores were compiled for only 2 months as a patrol officer while Cotarelo's were for 12 months.
 
 
 18
 When Cotarelo was turned down for promotion to sergeant, each trustee articulated legitimate reasons for choosing Officer Hood over Cotarelo, namely that the other was more highly ranked by the Chief, that Officer Hood interviewed better and had better scores, and so on.
 
 
 19
 Later promotions of other officers to Detective, without considering Cotarelo, occurred after Cotarelo's productivity had declined even further, a change to which he was largely indifferent, and after he refused to speak to Chief Warren except when professionally necessary because of a mistaken rumor. See Footnote 2, supra. Appellant's performance record is enough to demonstrate that he would not have been promoted even in the absence of the letter and lawsuits.
 
 
 20
 C. First Amendment Political Affiliation Claim
 
 
 21
 Taking adverse employment action against a non-policymaking employee for political reasons is a violation of that employee's First Amendment rights. See Vezzetti v. Pellegrini, 22 F.3d 483, 486-87 (2d Cir.1994) (involving a dismissal, not a failure to promote an employee). The plaintiff must prove "(1) that he or she engaged in constitutionally protected conduct, and (2) that such conduct was a substantial or motivating factor leading to" the adverse action. Id. at 487. Political party affiliation is protected by the First Amendment. Camacho v. Brandon, 317 F.3d 153, 161 (2d Cir.2003). To prevail on a motion for summary judgment on this issue, the defendants must show by a preponderance of the evidence that Cotarelo would not have been promoted even in the absence of the protected conduct. Vezzetti, 22 F.3d at 487.
 
 
 22
 Cotarelo argues, and we agree, that the evidence would allow the jury to infer that Mayor Zegarelli would favor his political supporters in promotions. However, Cotarelo has offered scant evidence that Mayor Zegarelli either made, or influenced, any employment decisions about Cotarelo for political reasons. Although the Mayor did have a conversation with Chief Warren in which he mentioned Cotarelo's support of his Democratic rivals, the record as a whole does not show that Chief Warren was anything but sympathetic toward Cotarelo's aspirations. In fact, Chief Warren recommended him for promotion to sergeant, sought to advise Cotarelo to improve his productivity so that he could be promoted in the future, and met with the Mayor to discuss ways Cotarelo might be promoted. It is undisputed that the Police Committee did not discuss Cotarelo's political leanings while considering promoting him to sergeant.
 
 
 23
 We need not determine whether this evidence was sufficient, however. As discussed above, Cotarelo would not have been promoted anyway because of his deliberately low productivity scores, his disciplinary record, and his refusal to speak to Warren save where professionally necessary. Under the standard articulated in Vezzetti, the defendants have demonstrated as a matter of law that Cotarelo would not have been promoted regardless of his political affiliation. Vezzetti, 22 F.3d at 487.
 
 CONCLUSION
 
 24
 Therefore, we affirm the district court's grant of summary judgment to the defendants.
 
 
 
 Notes:
 
 
 *
 The Hon. John Gleeson, U.S. District Judge for the Eastern District of New York, sitting by designation
 
 
 [1]
 Cotarelo testified at his deposition that, following his 1999 lawsuit, he "slowed it down a lot," meaning that he didn't write as many tickets, because he "didn't want to start any trouble" by writing tickets, which would force other officers to back him up, adding to their work. Cotarelo believed that he was able to get "back in [the other officers'] good graces because [he] didn't write that many tickers."
 
 
 [2]
 At his deposition, Cotarelo testified that he "stopped talking to Warren" because he believed that "Warren recommended Hood and not both of us" for promotion to sergeant. Cotarelo did, however, continue to communicate with Chief Warren "professionally and respectfully ... regarding any police matters."